Herbert ROSENGARTEN

v.

UNITED STATES.

David ROSENGARTEN

v.

UNITED STATES.

Nos. 307-56, 308-56.

United States Court of Claims.

March 2, 1960.

Madden and Littleton, JJ., dissented.

Bernard Weiss, New York City, for plaintiffs.

H. S. Fessenden, Washington, D. C., with whom was Charles K. Rice, Asst. Atty. Gen., James P. Garland and M. Carr Ferguson, Washington, D. C., on the brief, for defendant.

JONES, Chief Judge.

These actions for the recovery of income taxes for the year 1945, $34,837.90 plus interest as to plaintiff Herbert Rosengarten, and $16,164.38 plus interest as to plaintiff David Rosengarten, have been consolidated by stipulation because of the similarity of the questions presented.

During the years 1944 and 1945 plaintiffs were members of a family partnership, the Herbert Manufacturing Co. of New York City. Each filed a Federal income tax return for 1945 on March 13, 1946, and subsequently paid the liabilities due thereon. In 1947, the Internal Revenue Service determined that the family partnership would be disallowed. Consequently, the profits of the partnership for a period including 1944 and 1945 were redistributed among the permitted partners of the Herbert Manufacturing Co., and deficiencies for those years were asserted against plaintiffs. The 1945 deficiencies were discharged by credits and

cash payments during 1948, 1949, and 1951. Plaintiff Herbert Rosengarten made a final payment of $3,137.38 on July 16, 1951, and plaintiff David Rosengarten made a final payment of $2,177.86 on July 15, 1951.

On February 7, 1950, each plaintiff filed a claim in duplicate for refund for the year 1944 with the Collector (now District Director) of Internal Revenue for the Third District of New York. The claims alleged that the disallowance of the family partnership was legally erroneous in the light of certain recent decisions and rulings. On March 3, 1950, refund claims for 1944 and 1945 were filed in behalf of Walter Rosengarten, brother and co-partner of plaintiffs, who had been deceased since February 1946, alleging the same grounds as those offered in plaintiffs' 1944 claims.

In June 1953, plaintiffs' returns for 1944 and 1945 were re-examined and, based on a favorable reconsideration of the family partnership question, overassessments were recommended for 1944 and 1945. The 1944 claims were allowed and the refunds were applied in part, by consent of the plaintiffs, to deficiencies owed by members of their respective families. Refund of the overassessments for 1945 was denied on the ground that neither plaintiff had timely filed a refund claim as required by section 322(b) (1), Internal Revenue Code of 1939.[1]

On inquiry, plaintiffs were informed that the Collector for the Third District had no record of any claim for 1945 having been filed by either plaintiff. Thereafter, a claim and an amended claim for 1945 were filed on July 2, 1953, and December 27, 1954, respectively, by each plaintiff. These overassessments of $34,837.90 as to Herbert, and $16,164.38, as to David, have not been refunded by the

defendant and they form the subject matter of these consolidated suits.

Plaintiffs' claims for 1944 were prepared in pencil by an employee of an accounting firm who had them typewritten in duplicate after checking the pencil copy. Claims for 1945 were prepared in duplicate at the same time based on the same theory. The original and duplicate claims for both plaintiffs for both years were hand-carried by another employee of the accounting firm to the plaintiffs' place of business where they signed the documents presented to them.

At about the same time the accounting firm prepared claims for Walter Rosengarten for 1944 and 1945 for execution by his administratrix. These claims were also prepared in pencil, then typed in duplicate. The Walter Rosengarten claims were signed at a different time and were filed with the Collector.

It has not been shown whether plaintiffs' 1944 claims which admittedly were properly filed arrived at the Collector's office in one envelope or more than one.

 It is plaintiffs' contention that the evidence supports their position that the 1945 claims, as well as those for 1944, were filed within the statutory period. As an alternative theory, they assert that the claims filed in July 1953, and December 1954, were merely formalizing statements of the legally sufficient informal claims for refund for 1945 contained by implication in their own claims for 1944 and Walter's claims for 1944 and 1945.

Section 322(b) (1) of the 1939 Code, on which the Collector based his denial, states that unless a claim for refund be filed within three years of the filing of the return for that year or within two years of the payment of the tax, no refund will be made or credit allowed.[2]

---

1. 26 U.S.C. 322(b) (1) (1952 Ed.).

2. The cited section of the 1939 Code provides, in pertinent part:
 "§ 322. Refunds and credits.
 \* \* \* \* \*
 "(b) *Limitation on allowance*—(1) *Period of limitation.*—Unless a claim for credit or refund is filed by the taxpayer

within three years from the time the return was filed by the taxpayer or within two years from the time the tax was paid, no credit or refund shall be allowed or made after the expiration of whichever of such periods expires the later. If no return is filed by the taxpayer, then no credit or refund shall be allowed or

This section would seem to prohibit the Commissioner of Internal Revenue from making a refund in the absence of compliance with its provisions. Indeed, it has been held that a Government official has no power to waive the statute of limitations in this type of situation. United States v. Garbutt Oil Co., 1938, 302 U.S. 528, 58 S.Ct. 320, 82 L.Ed. 405. If then, as defendant maintains, the first claim for the 1945 tax year was not filed by either plaintiff until July 1953, at the earliest, there was no claim filed either within three years of the returns or within two years of the payments thereon (except as to the final deficiency installment payments of July 1951).

Plaintiffs direct our attention to a line of cases, the most recent of which is the case in the Ninth Circuit, Jones v. United States, 1955, 226 F.2d 24, which are to the effect that a strong presumption of receipt arises where there is evidence of proper preparation, addressing, and mailing of a claim for refund to the proper tax official. It has also been held that this presumption may be strong enough to overcome the presumption that a Government official has acted correctly or determined properly in respect to an official act.

All of the cases cited by plaintiffs, Detroit Automotive Products Corp. v. Commissioner, 6 Cir., 1953, 203 F.2d 785; Crude Oil Corp. of America v. Commissioner, 10 Cir., 1947, 161 F.2d 809; Haag v. Commissioner, 7 Cir., 1932, 59 F.2d 516; and Hudson v. United States, D.C. 1950, 92 F.Supp. 555, have in common the fact that the trial court was offered compelling evidence of correct preparation, signing, addressing, stamping, etc., of the claim while, at the same time, the

Government was able only to offer evidence of a purely negative character, i. e., that the tax collector had no record of such claim having been filed in his office. The instant case differs, however, in regard to the evidence concerning those vital facts.

We are satisfied that claims for both plaintiffs for 1944 and 1945 were prepared in duplicate by the accounting firm. As a matter of fact, those for the year 1944 were received by the Collector and were stamped, logged, numbered and attached to the returns to which they pertained. We think that the claims for both years were signed by the plaintiffs when presented to them by the employee of the accounting firm. Moreover, the evidence to that effect is uncontroverted. The evidence as to what happened thereafter is less compelling.

■ Mr. Rossman, from the accounting firm, testifying some eight years and nine months after the fact, indicated that he knew in general terms that he was presenting original and duplicate claims for 1944 and 1945 to each plaintiff to be signed. He testified that they were signed and notarized and that two envelopes were prepared at his direction for mailing to the Collector of Internal Revenue. His recollection as to which of the documents were placed in which envelopes, the manner of affixing the stamps and where and when he mailed the envelopes is far less categorical. He could not definitely and explicitly describe his handling of these all-important documents; indeed, this is not unusual after a lapse of so many years. Moreover, we are aware of cases holding that there was a failure of filing notwithstanding evidence of timely filing where the evidence con-

made after two years from the time the tax was paid, unless before the expiration of such period a claim therefor is filed by the taxpayer.

"(2) *Limit on amount of credit or refund.*

"The amount of the credit or refund shall not exceed the portion of the tax paid—

"(A) If a return was filed by the taxpayer, and the claim was filed within three

years from the time the return was filed, during the three years immediately preceding the filing of the claim.

"(B) If a claim was filed, and (i) no return was filed, or (ii) if the claim was not filed within three years from the time the return was filed the taxpayer, during the two years immediately preceding the filing of the claim." [26 U.S.C. 322 (1952 Ed.).]

sisted of a personal recollection of events which were supposed to have transpired several years before. Worden & Co. v. United States, 1938, 22 F.Supp. 418, 86 Ct.Cl. 556. The character of this portion of the evidence, relating to the mechanics of the alleged filing by mail of the 1945 claims, is not such as would lead us to say that a presumption of due delivery and receipt by the defendant has arisen. The evidence tending to show delivery of a claim to the Commissioner or his agent must be strong enough to suggest that it is highly probable that the filing has taken place. Otherwise no presumption will be indulged.

In any event, a presumption based on such evidence would not prevail against the evidence offered by the Government as to the general and specific procedures of the local Internal Revenue office. The defendant has not merely shown that it has no record of the claims at issue; it has shown that it is extremely doubtful that the claims ever, in fact, found their way to the office. We are not prepared to say that it is impossible for the claims to have been lost or mislaid in the office of the Collector after they had been received. But we do think, based on the evidence before us, that such eventuality was most unlikely.

Defendant has introduced evidence concerning the step-by-step treatment of incoming mail, particularly as to claims, in the Office of the Collector for the Third District of New York. Throughout the handling process of such documents various indexing and registry procedures are taken. It is virtually impossible for any in-coming document to be discarded with its envelope because of the practice of viewing every opened envelope over a glass scope. It will be noted that it is possible for both of Mr. Rossman's envelopes to have reached the Collector's office containing only the plaintiffs' 1944 claims.

Applying the evidentiary facts to the law as we understand it, we must conclude that the plaintiffs' evidence is not so compelling as to excuse the proof of actual filing in compliance with the statute on a theory of presumptive filing. It is with reluctance that we hold as we must in view of the admitted right of the plaintiffs, but for the failure of filing, to the claim before this court. This is all the more so since they themselves are not responsible for the forfeiture of the refund. They merely entrusted the purely mechanical end of their fiscal affairs to their accountants which is certainly a reasonable course for busy industrialists.

■ The alternative argument, that the 1953 and 1954 claims served to perfect informal claims previously presented through the media of plaintiffs' 1944 claims and the 1944 and 1945 claims of Walter Rosengarten, also fails when the specific facts are tested by the law.

■ There are a number of reasons why it has been said that "[T]he filing of a claim or demand as a prerequisite to a suit to recover taxes paid is a familiar provision of the revenue laws, compliance with which may be insisted upon by the * * * United States." United States v. Felt & Tarrant Mfg. Co., 1931, 283 U.S. 269, 51 S.Ct. 376, 377, 75 L.Ed. 1025; Aplington v. United States, Ct.Cl., 169 F.Supp. 815.[3] Perhaps the strongest justification for this rule is to insure that the Commissioner, as representative of the Government's fiscal structure, will be put on notice of refund claims so that it can reasonably be predicted what revenues will be available to meet the estimated liabilities.

An informal claim timely filed which fairly gives notice of a taxpayer's intention to press for a refund of taxes has been held to be sufficient to satisfy the statute, even if the formalizing of that claim is not accomplished until after the statute has run. This doctrine has been applied in this court and most of the other Federal courts. United States v. Kales, 1941, 314 U.S. 186, 62 S.Ct. 214, 86 L.Ed. 132; Crenshaw v. Hrcka, 4 Cir., 1956, 237 F.2d 372; Cumberland Port-

3. Certiorari denied 1959, 361 U.S. 821, 80 S.Ct. 69, 4 L.Ed.2d 67.

land Cement Co. v. United States, 1952, 104 F.Supp. 1010, 122 Ct.Cl. 580.

Those and other cases acknowledge that a specific taxpayer may claim a refund for a specific year in a formal fashion even beyond the limitation period if the claim relates back to an informal claim filed by that taxpayer for that year within the limitation period. We are aware of no case, however, where a court has held that a request for refund for a particular year constituted a claim for *another* year, nor any case in which a claim for refund by a specific taxpayer constituted an informal claim for that year on behalf of a *different* taxpayer. Yet that is what plaintiffs would have us hold in this case.

The suggested bases for the plaintiffs' alleged informal claims for 1945 are their own claims for 1944 and those of their brother for 1944 and 1945. These, they insist, formed an ample basis on which the Commissioner might have surmised that plaintiffs were also claiming for 1945 since a favorable determination of the family partnership question presented in the claims actually filed would have entitled them to a refund for 1945 as well as 1944. This, in effect, would admit of a theory of filing by inaction.

If we are to hold that a certain act constitutes an informal claim alerting the Commissioner to a potential demand for refund which will satisfy the requirements of section 322(b) of the Code, the act must be clear and explicit. An act which merely makes it possible for the Commissioner to discover the existence of a claim if he makes an independent investigation and sorts out the clues will not do. The cases supporting plaintiffs' position all reveal that the device considered an informal claim was some definite instrument, a letter of transmittal, a waiver form, a qualification attached to a check, or the like, which indicated that the taxpayer questioned a tax payment which he had made for a particular year. Each device embodied a clarity which insured that the Commissioner would not be misled.

Before we can hold that there has been an informal claim filed within the statutory period, we must be satisfied that it contains the means by which the Commissioner will be apprised that a certain tax is being contested without resort to any extraneous factors. Notwithstanding the fact that the result of our holding is to deprive plaintiffs of the major part of a refund to which, on the merits of the claim, they are apparently entitled, we hold that the record does not establish in a satisfactory manner that a claim as to the refund of 1945 income taxes was filed by either plaintiff before July 2, 1953.

Plaintiffs' final payments of $2,177.86 and $3,137.38 on the 1945 tax liabilities were made on July 15 and 16, 1951. Under section 322(b) which authorizes recovery of taxes paid within two years of the filing of a claim (not to exceed the amounts paid within the two years) plaintiffs are entitled to judgment for those sums. In its brief, the defendant, in effect, admits this but states that refunds as to those amounts were not made because of plaintiffs' refusal to agree to offset against the deficiencies of the partnership members of their respective families. We find in the statutes no legal bar to plaintiffs' recovery of the sums paid on July 15 and July 16, 1951.

For the foregoing reasons judgments will be entered for the plaintiffs in the following amounts: plaintiff Herbert Rosengarten, $3,137.38; plaintiff David Rosengarten, $2,177.86, with interest on each as provided by law.

It is so ordered.

REED, Justice (Ret.), sitting by designation, and LARAMORE, Judge, concur.

WHITAKER, Judge, took no part in the consideration and decision of these cases.

MADDEN, Judge, with whom LITTLETON, Judge (Ret.), joins, dissenting:

The court has felt obliged to decide that claims of these plaintiffs, concededly

otherwise valid, must be rejected because, the court concludes, the plaintiffs did not file claims for refund within the period of time set by the statute for filing such claims.

We think the evidence points more strongly to the conclusion that the plaintiffs did file timely claims for refund. The court finds:

"Plaintiffs' claims for 1944 were prepared in pencil by an employee of an accounting firm who had them typewritten in duplicate after checking the pencil copy. Claims for 1945 were prepared in duplicate at the same time based on the same theory. The original and duplicate claims for both plaintiffs for both years were hand-carried by another employee of the accounting firm to the plaintiffs' place of business where they signed the documents presented to them."

The foregoing events occurred on February 7, 1950. In June 1953 the revenue office, having concluded that the plaintiffs were entitled to refunds for both 1944 and 1945, found the claim for refund for 1944 but was unable to find any such claim for 1945.

In this state of the evidence, the court concludes that the claim for 1945, though typed for and signed by the plaintiffs, was not sent to the revenue office, though the 1944, claim, signed at the same time, was sent.

To reach this conclusion, one must suppose that the plaintiffs were so careless of their claims for some $50,000 that they allowed the papers necessary to support those claims to be lost, although at the same instant of time they carefully mailed other papers of the same import relating to the preceding year. We think the foregoing supposition is quite violent.

To reach the opposite conclusion, one has to suppose only that the revenue office is not infallible in its handling of the tens of thousands of papers which it receives; that two papers out of those tens of thousands may have been misfiled and thereby lost. This supposition seems to us to contain no element of violence. On the contrary, it is consistent with the experience of every person who has had numerous dealings with large and impersonal organizations, public and private, handling myriads of documents.

We would not reject a just claim on the sole ground that the Internal Revenue Department could not find a paper relating to it three years after, according to trustworthy evidence, it was sent to that office. We would await the further development of automation before we would conclude that the Internal Revenue Department is immune from human error.