**RSH CONSTRUCTORS, INC., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 372–87C.

United States Claims Court.

April 26, 1988.

G. Kenneth Norrie, Jacksonville, Fla., for plaintiff.

Carolyn Galbreath, Washington, D.C., with whom was Asst. Atty. Gen. John R. Bolton, for defendant.

## OPINION

FUTEY, Judge.

This case involves a construction contract between plaintiff, RSH Constructors, Inc. (hereinafter RSH), and defendant, United States, through the Army and Air Force Exchange Service (hereinafter AAFES). Plaintiff alleges that defendant breached the contract by withholding $25,-000 from its final payment to plaintiff, and that defendant's contracting officer issued an improper and erroneous final decision rejecting plaintiff's work under the contract and ordering the re-roofing of the project. Defendant has moved for the dis-

missal of this action for lack of jurisdiction on the grounds, *inter alia,* that plaintiff has failed to submit a monetary claim to the contracting officer and receive a final decision thereon, as required under the Contract Disputes Act (CDA) of 1978, 41 U.S.C. § 601, *et seq.* For the reasons discussed hereinafter, the court grants defendant's motion and dismisses the complaint.

## FACTS

RSH, a Florida corporation, contracted with AAFES on February 6, 1984, to construct the Patrick Air Force Base Shopping Center at Patrick Air Force Base, Florida. Construction proceeded routinely and the facility was occupied in November 1984, when problems were discovered with the roof. AAFES informed RSH, as general contractor, that the roof needed repairs. Work proceeded until February 14, 1985, when an inspection was performed and AAFES advised RSH that the roof was unacceptable. After this inspection a "punch list" was developed itemizing $25,-000 worth of items needing completion.

In a letter dated May 8, 1985, the government's architect (BRP & H) recommended that final payment of $32,768 be withheld from RSH. RSH objected to this recommendation in a letter to AAFES's contracting officer (CO) on May 30, 1985. RSH asserted that no more than $2,000 worth of the $25,000 in punch list items remained incomplete, and that the other $7,768 was due and payable since it was for additional work authorized by a change order and long since completed. The $7,768 was subsequently paid to RSH, but AAFES continued to withhold $25,000.

AAFES brought in two independent inspectors who performed tests on the roof in September 1985 and March 1986. These tests confirmed that, despite RSH's attempted repairs, the roof leaked at various places.

On June 25, 1986, AAFES's contracting officer sent a letter to RSH advising that he had enclosed "my Final Decision relative to the roof of the shopping center at Pat-

rick Air Force Base." This Final Decision, which the CO indicated was issued in accordance with the "Disputes" clause of the contract, gave RSH 60 days "to complete remedial action in accordance with contract specifications or AAFES will take remedial action and hold the contractor responsible for all costs." The last paragraph of this decision stated that "It is final and conclusive unless [appealed to the Armed Services Board of Contract Appeals within 90 days or an action was brought in the U.S. Claims Court within 12 months]."

On September 19, 1986, RSH submitted a proposal for the repair of the subject roof. By letter dated October 30, 1986, however, the contracting officer informed RSH that "Your proposal ... is unacceptable and my final decision in this matter ... remains as issued." The CO further advised that, pursuant to the terms of the contract, his letter constituted "final notice" to RSH and that all "corrective action" had to be completed within 60 days.

On February 2, 1987, the contracting officer again wrote to RSH, indicating that "It is our intention to resolicit the roof requirement." The CO advised that this action was being taken in accordance with the terms of the contract, and that "Your firm will be advised of the final cost."

RSH filed its complaint in this court on June 23, 1987, alleging that the Tucker Act, 28 U.S.C. § 1491, and the Contract Disputes Act of 1978, 41 U.S.C. § 609(a)(1), provide the jurisdictional basis therefor. Plaintiff demands damages (of $25,000) on the breach of contract action, and the reversal of the contracting officer's Final Decision or the assessment or corrective costs in a "reasonable amount." Defendant filed its motion to dismiss on September 23, 1987. Oral argument on this motion was held in Washington, D.C., on February 11, 1988.

### Discussion

The contract between RSH and AAFES certainly falls within the ambit of the Contract Disputes Act (CDA). The central jurisdictional issue before the court is two-part: (1) whether plaintiff submitted a proper claim to the contracting officer and (2) whether the CO issued a final decision on the claim.

### I.

The Contract Disputes Act provides that "All claims by a contractor against the government relating to a contract shall be in writing and shall be submitted to the contracting officer for a decision." 41 U.S.C. § 605(a). But the Act does not otherwise define "claim." Consequently, this Court has looked variously to the legislative history of the CDA, federal regulations, and the terms of the contract at issue for the definitional guidelines to determine whether a claim cognizable under the CDA has arisen in a given case. Factors to be considered are whether (1) the contractor has submitted a written demand to the contracting officer asserting specific rights and requesting specific relief; (2) if monetary compensation is sought, the amount is stated with particularity in a sum certain; and (3) the CO is requested to issue a final decision. *Paragon Energy Corporation v. United States*, 645 F.2d 966, 227 Ct.Cl. 176, 186, 192 (1981); *Tecom, Inc. v. United States*, 732 F.2d 935, 936–37 (Fed.Cir.1984); *Z.A.N. Company v. United States*, 6 Cl.Ct. 298, 304 (1984); *Hoffman Construction Co. v. United States*, 7 Cl.Ct. 518, 522–26 (1985).

The RSH–AAFES contract incorporated these criteria in defining a claim under the dispute resolution procedure set forth in Section 40 of the contract. This section reads, in pertinent part, as follows:

40. DISPUTES

(a). (1) Contractor must submit any request for monetary or other relief relating to this contract in writing to the Contracting Officer. The request must specify the amount of money or other relief requested and include all supporting data. In addition, with the request or any amendment thereto, Contractor must submit a signed certificate reading as follows:

"I certify that this request and any ensuing claim are made in good faith, that the supporting data are accurate

and complete to the best of my knowledge and belief, and that any amount requested accurately reflects the amount for which Contractor believes AAFES is liable.

_____
(Signature of individual authorized to bind Contractor)

\*   \*   \*   \*   \*   \*

(2) Contractor's request for payment of money or other relief is not a "claim" until:

(a) A written request has been received by the Contracting Officer complying fully with subparagraph (1) above,

(b) A dispute arises between the parties after a reasonable time for review and disposition, and

(c) Contractor requests the Contracting Officer to issue a final decision.

\*   \*   \*   \*   \*   \*

(f) The Contract Disputes Act of 1978 and the provisions of this contract contain the sole procedures for resolving disputed claims relating to this contract....

Plaintiff asserts that its letter to the contracting officer of May 30, 1985, itemizing the monies withheld and requesting their payment, constitutes a "claim ... sufficient to trigger the appeals mechanism of the Contract Disputes Act of 1978."[1] The court does not agree.

■ The subject letter represents less a definitive request for payment, within the meaning of contract section 40(a)(1), as one piece of an ongoing series of correspondence in which plaintiff objects to the recommendation of defendant's architect that AAFES withhold certain monies. After listing the $25,000 worth of work which it had agreed to perform, RSH stated that "It is our opinion that the punch list items have been completed with the exception of a few minor items, certainly no more than $2,000.00 in value.... We feel that payment in full should be made and if any retention is withheld, it should not be in

excess of $2,000.00." This language implies an ongoing effort by RSH to comply with its contractual commitments and reflects uncertainty as to the amount of money it is owed. In the court's opinion, such language does not represent a demand for payment of a sum certain within the contemplation of section 40 of the contract. Nor does plaintiff's "request that you [the CO] personally take immediate control of this situation and resolve it to everyone's satisfaction" (at the end of the letter) constitute a request that the contracting officer "issue a final decision," as mandated in contract section 40(a)(2)(c).

■ Plaintiff rightfully points out that the "Disputes" clause of the contract cannot modify the jurisdictional requirements of the Contract Disputes Act, and suggests that the certification requirement set forth in contract section 40(a)(1) does just that in the case at bar. Whereas section 605(c)(1) of the CDA provides that a certificate of good faith accompany all claims of over $50,000, RSH asserts a claim of less than that against AAFES. Accordingly, plaintiff did not need to submit the signed certificate to the contracting officer called for in contract section 40(a)(1). The court agrees with this contention, and concludes that the requirement of certification, in accordance with the CDA, only applies to a claim by RSH of more than $50,000. The inapplicability of certification in this case, however, does not excuse plaintiff from satisfying the other requirements of presenting a claim to the contracting officer set forth in section 40(a)(1) and (2). As previously discussed, RSH failed to satisfy those requirements.

Accordingly, the court concludes that plaintiff's letter of May 30, 1985, does not constitute a claim cognizable under the CDA. Nor does any other document in the record amount to a claim by RSH.

## II.

Plaintiff argues that any doubts as to whether its May 30, 1985 letter constituted a monetary claim within the meaning of the

_____
[1] Plaintiff's Response to Defendant's Motion to Dismiss, p. 7.

CDA were resolved by the contracting officer's Final Decision of June 25, 1986. The last paragraph of the decision, which gave RSH 60 days to complete its repairs on the roof, provided as follows:

> This is the final decision of the contracting officer. It is final and conclusive unless, within 90 days from the date of your receipt of this final decision, you mail or otherwise furnish the contracting officer a written appeal (in two copies) addressed to the Armed Services Board of Contract Appeals (ASBCA); or, within 12 months from the date of your receipt of my final decision, you bring an action in the United States Claims Court.

■ This language was taken directly from section 40(b)(1) and (2) of the RSH–AAFES contract, and accords with the appeals procedures set forth in sections 606 and 609(a)(1) of the Contract Disputes Act. With such specific instructions from the contracting officer, implying that the jurisdictional prerequisites of the CDA had been satisfied, it is certainly understandable why plaintiff filed its action in this court.[2] The insertion of this standard language by the CO, however, cannot *ipso facto* confer CDA jurisdiction upon this court in the absence of an underlying claim by RSH properly submitted to the contracting officer.[3] *Paragon Energy Corp., supra,* 645 F.2d 966, 227 Ct.Cl. at 184.

Moreover, a close reading of the CO's Final Decision reveals at best a tenuous connection to plaintiff's purported claim—the letter of May 30, 1985. After reciting the history of defendant's inspections of the roof and plaintiff's attempts to repair

the same, the CO ordered as follows in the penultimate paragraph of his Decision:

> Therefore, after full consideration of these circumstances, contractor is afforded sixty days from receipt date of this decision to complete remedial action in accordance with contract specifications or AAFES will take remedial action and hold the contractor responsible for all costs.

■ As this language indicates, and the CO specifically stated in his cover letter to RSH, the Final Decision of June 25, 1986, pertained solely to plaintiff's obligations with respect to (roof) repairs at the newly-built shopping center. It made no mention of plaintiff's letter of May 30, 1985, monies withheld by AAFES from the final progress payment, or any claim therefor by RSH. Thus, even if plaintiff's letter of May 30, 1985, were to be construed as a monetary claim under the CDA, the CO's decision of June 25, 1986, cannot reasonably be interpreted as a Final Decision on *that* claim.

In a declaration dated August 27, 1987,[4] the contracting officer affirmed that he issued his Final Decision for the purpose of "rejecting the roof of the Shopping Facility at Patrick AFB." He also stated that "I have never received a claim from RSH Constructors, Inc. for any monies due or payable under the contract in the prescribed form of the Disputes Clause in the contract. Consequently, I have not issued a Final Contracting Officer Decision involving any monies claimed by RSH Constructors, Inc. under this particular contract." The CO neglected to indicate, however, what document he considered as constitut-

---

2. Referring to this language at oral argument, plaintiff's counsel stated that "I'm not brave enough to ignore it as a lawyer when it's presented to me.... And I think it shows that the contracting officer certainly thought that his decision was final. I believe he meant what he said.... This is my final decision and you have to take these steps. I could not in peril of being barred by limitations [fail to file suit]." *Transcript of Proceedings,* pp. 32–33.

3. Defendant conceded at oral argument that the last paragraph of the contracting officer's decision was a mistake. Thus, counsel for the government stated that:

"What purports to be a final decision really is not." *Transcript of Proceedings,* p. 9.

"I do not wish to attempt to explain away inartful language in this letter, simply to say that we should ignore [it]....... [T]his ... is boiler plate language ... that contracting officers, well meaning as they might be, put into contracts at times when the appeal that might be warranted by the language is not at that point available." *Id.,* p. 13.

4. Appendix 1 to Defendant's Motion to Dismiss.

ing a "claim" by RSH with respect to the roof repairs. The record in this action contains no evidence of any such claim. It is not surprising, therefore, that RSH was confused as to the import of the "Final Decision" it received. Plaintiff's assumption that it encompassed the issue of monies withheld by AAFES, at least partly in connection with the roof, was not entirely unwarranted.

\* \* \* \* \* \*

Plaintiff argues, in the alternative, that the contracting officer's Final Decision constituted a government claim against RSH within the meaning of section 605(a) of the CDA. This argument is based on the language advising plaintiff that, if repairs were not completed in 60 days, "AAFES will take remedial action and hold the contractor responsible for all costs." Plaintiff cites *Gunn-Williams v. United States*, 8 Cl.Ct. 531 (1985), in which the court held that "Once the Government contracting officer issues a final decision representing the Government's intention to pursue its contractual remedies for default, a Government claim exists that is ripe for appeal to this Court." 8 Cl.Ct. at 535. Plaintiff also cites *Citizens Associates, Ltd. v. United States*, 12 Cl.Ct. 599 (1987), in which the court stated that "Had the contracting officer unilaterally set its course by terminating the contract for default in a written final decision, 41 U.S.C. §§ 605(a), 609(a), and exercised one of its contractual remedies, a bona fide dispute would have arisen and plaintiff could have appealed that government claim to this court without first filing any claim with the contracting officer." 12 Cl.Ct. at 601.

The scenarios described in the foregoing cases, however, do not comport with the case at bar. Here, the contracting officer's "Final Decision" of June 25, 1986, did not terminate the RSH–AAFES contract for default, or announce the government's intention to pursue any specific contractual remedy. Rather, RSH was given 60 days to cure the roof defects, and thus avoid any remedial action by the government. This deadline was subsequently extended and RSH, in fact, continued to negotiate with AAFES on the roof repairs until February 2, 1987, when the CO informed RSH by letter that AAFES intended to resolicit bids on the roof and that RSH would "be advised of the final cost."

The letter of February 2, 1987, cannot be construed as a government claim either, since it does not purport to be a final decision of the contracting officer terminating the contract for default, and does not state any monetary claim against RSH in a sum certain. In short, the contracting officer's Final Decision and subsequent correspondence with RSH do not represent a government claim within the meaning of 41 U.S.C. § 605(a).

\* \* \* \* \* \*

The court holds, therefore, that the action at bar does not satisfy the jurisdictional requirements of the Contract Disputes Act. The practical ramification of our holding is that plaintiff's "appeal" to this court is premature. The proper course of action for a contractor like RSH is to submit a monetary claim to the contracting officer and await a final decision on that claim. If the CO's final decision is adverse, RSH may then appeal to the appropriate board of contract appeals, 41 U.S.C. § 606, or file an action in this court, 41 U.S.C. § 609(a)(1).

In consideration of this holding, the court finds it unnecessary to address any other jurisdictional issues raised by the complaint.

*Conclusion*

For the reasons stated hereinabove, defendant's motion to dismiss is hereby granted. The Clerk is directed to dismiss the complaint without prejudice. Because this action was precipitated by the contracting officer's error, costs shall be borne by the defendant.

IT IS SO ORDERED.