**FACILITIES SYSTEMS ENGINEERING CORPORATION, a California Corporation, Plaintiff,**

**v.**

**The UNITED STATES, Defendant.**

**No. 91–1366C.**

United States Claims Court.

April 24, 1992.

Roger C. Glienke, Los Angeles, Cal., of record for plaintiff. Thorpe and Thorpe, of counsel.

S. Lane Tucker, Washington, D.C., with whom was Asst. Atty. Gen., Stuart M. Gerson, for defendant. David M. Cohen, Director, Terrence S. Hartman, Asst. Director, Cynthia D. Walicki–Chan and I. Avrum Fingeret, Dept. of Energy, of counsel.

## OPINION

FUTEY, Judge.

This government contract case is before the court on defendant's motion to dismiss plaintiff's complaint for lack of subject matter jurisdiction. Plaintiff contracted with the United States to supply architectural and engineering services, and seeks compensation for government delays and contract changes, and reimbursement of costs incurred under the contract. In its motion, defendant asserts that the court lacks jurisdiction over plaintiff's complaint as plaintiff failed to file a properly certified claim cognizable under the Contract Disputes Act of 1978 (CDA), 41 U.S.C. §§ 601–13, with the contracting officer (CO).

### Factual Background

On August 7, 1985, the United States Department of Energy (DOE) awarded plaintiff, Facilities Systems Engineering Corporation, Contract No. DEAC04–85AL22487, for architectural and engineering services to be performed at the DOE's Rocky Flats Plant in Golden, Colorado. Pursuant to the contract, plaintiff was to participate in a DOE project entitled "Renovation of Plutonium Building Utilities."

On June 30, 1986, the DOE issued modification M004. In the modification, the DOE informed plaintiff that it had assigned its rights and interest in its contract with plaintiff to Rockwell International Corporation (Rockwell). Rockwell had entered into a separate contract with the DOE to manage and operate the Rocky Flats Plant for the DOE. Plaintiff further agreed to modify the contract as follows:

References in Parts I, II, and III to "Government" or "Contracting Officer" are deleted and "Rockwell International" substituted therefor except in the clauses entitled: "Definitions;" "Audit Negotiations;" "Equal Opportunity;" "Authorization and Consent;" "Reporting of Royalties;" "Disputes;" and "Equal Opportunity Preaward Clearances of Subcontract," where "the Government" or "Contracting Officer" shall remain unchanged.

Thus, effective June 30, 1986, Rockwell began administering the contract in place of the DOE. From August 26, 1986 through July 8, 1988, plaintiff claims that Rockwell issued 12 modifications to the contract.

According to plaintiff, from at least September 7, 1987, it began corresponding with Rockwell concerning the "claims" presently at issue. In March 1988, plaintiff requested compensation for losses incurred in contract performance. Rockwell rejected plaintiff's request in a letter of June 8, 1988, advising plaintiff that the letter constituted a final determination of plaintiff's request. Rockwell further informed plaintiff that it could contest the determination by presenting a claim to the CO pursuant to the disputes clause of the contract. Rockwell concluded by providing the name of the relevant CO and listing his address.

On August 26, 1988, Rockwell issued a notice of partial termination of the contract

for the convenience of the government. Plaintiff had previously completed the part of the contract that was unaffected by the partial termination. Therefore, on the issuance of the partial termination, plaintiff's contractual relationship with Rockwell was at an end. On September 16, 1988, plaintiff accepted the termination but reserved all rights available at law and in equity.

On November 8, 1988, plaintiff sent a letter to Mr. A.E. Whitman, the CO for the DOE, in which it made three "claims." First, plaintiff alleged that it had suffered loss of business reputation and money damages because of Rockwell's incompetent management. In addition, plaintiff asserted that Rockwell had failed to execute a contract change and had created additional work. Finally, plaintiff contended that Rockwell had caused financial losses by failing to release funds earmarked for plaintiff. The compensation sought for these "claims" amounted to $282,247.42. In the last paragraph, plaintiff stated that it had sought legal advice and was "prepared to provide all required actions to perfect the claim." Whitman never issued a written decision responding to plaintiff's "claims."

On December 29, 1989, the DOE, Rockwell, and EG & G Rocky Flats, Inc. (EG & G) executed a document entitled "RFP Three Party Transfer Agreement." In the agreement, Rockwell assigned EG & G its rights and interest in both its managing and operating contract with the DOE and its subcontracts with contractors such as plaintiff. Conversely, EG & G agreed to assume Rockwell's duties under those contracts. The agreement was effective January 1, 1990.

On May 23, 1990, plaintiff and EG & G met to discuss plaintiff's "claims." The parties dispute what happened at that meeting. In his declaration, Edward F. Slattery, plaintiff's chairman and chief executive officer, maintains that Brad M. Smith, Senior Counsel for EG & G, stated that he had reviewed the correspondence relating to plaintiff's "claims" but had not found a claim presented to the DOE that complied with the FAR's certification requirement. Therefore, Slattery alleges, Smith instructed plaintiff to submit a claim to the DOE that fulfilled that requirement and in addition provided background data. However, in his declaration, Smith asserts that he met with plaintiff to determine whether plaintiffs' "claims" could be compromised. According to Smith, he suggested that plaintiff provide substantiation for its position to facilitate further compromise discussions.

On June 20, 1990, plaintiff addressed a letter to "United States Department of Energy, Albuquerque Operations Office, P.O. Box 928, Golden, Colorado, 80402–0928, via EGG [sic] Colorado Corporation, Attention: Mr. Brad Smith, Chief Counsel." The "Subject" of the letter was "Claims in Process under Contract No. DE AC04–85–AL22487, Renovation of Plutonium Building Utilities." The letter provided in relevant part as follows:

> Dear Mr. Smith:
>
> Pursuant to our discussion of May 23, 1990, herewith the supporting documentation requested with regard to our claims:

| | |
|---|---|
| Delay Claim | $184,671.00 including interest |
| Change Notice No. 7, and additional work | $ 65,010.00 including interest |
| Reimbursable Settlement | $ 37,441.00 including interest |

> Our recordings of that meeting indicate that you requested supporting documentation in the following specific areas of the claims presented to the Department of Energy in our letter of July 12, 1988 addressed to Mr. A.E. Whitman.[1]
>
> [List of the area in which supporting documentation was requested, followed by the section of the enclosed documentation addressing the area.]

---

1. Neither party has supplied the July 12, 1988, letter referenced in plaintiff's June 20, 1990, letter or accounted for its absence. In the record presently before the court, the only letter from plaintiff to Whitman purporting to state a claim is dated November 8, 1988. Other than the June 20, 1990 letter, the November 8, 1988, letter is also the only letter that plaintiff refers to in its pleadings as containing claims.

The contractor believes that this documentation comprehensively meets the objectives described in the meeting of May 23, 1990 at Rocky Flats.

[Certification language.] Facilities Systems Engineering Corporation hereby demands that the Department of Energy pay to Facilities Systems Engineering Corporation the full amount of such claims.

I am and our counsel is prepared to discuss this matter with you at your convenience.

Very Truly Yours,
FACILITIES SYSTEMS ENGINEERING CORPORATION
/s/
Edward V. Slattery,
Chief Executive Officer

The supporting documentation, referenced in the letter, detailed the basis for plaintiff's "claims."

After 60 days had passed without a final decision from the CO on the "claims" submitted in the letter of June 20, 1990, plaintiff proceeded under the "deemed denied" provision of the CDA, 41 U.S.C. § 605(c)(5).[2] Accordingly, on August 16, 1991, plaintiff filed a direct access appeal in this court under § 10(a)(1) of the CDA, 41 U.S.C. § 609(a)(1). In its complaint, plaintiff seeks compensation of $397,177.34 for government delays and contract changes, and reimbursement of costs incurred under the contract.

On November 25, 1991, defendant filed a motion to dismiss plaintiff's complaint for lack of subject matter jurisdiction, contending that plaintiff failed to comply with the CDA. First, defendant alleges that a dispute over the amount of compensation requested in the June 20, 1990 letter did not exist, and, therefore, the letter cannot be a legitimate claim under the CDA. In addition, defendant maintains that the June 20, 1990, letter failed to request a final decision from the CO as required by the CDA, nor was it submitted to the CO for a final decision as the CDA further mandates. In its response of January 2, 1992, plaintiff contends that it fully complied with the CDA. On February 12, 1992, defendant filed a reply to plaintiff's response, disputing plaintiff's contentions.

### Jurisdiction

▮▮▮ Under the CDA, a contractor seeking compensation in excess of $50,-000.00 must submit a properly certified claim to the CO for a decision. 41 U.S.C. §§ 605(a), 605(c)(1). This requirement is a jurisdictional prerequisite for review of the claim in this court. *Dawco Constr. Co. v. United States*, 930 F.2d 872, 877 (Fed.Cir. 1991). A CO's final decision on a defective claim is a legal nullity. *W.M. Schlosser Co. v. United States*, 705 F.2d 1336, 1338 (Fed.Cir.1983).

▮▮▮ The CDA does not specify what constitutes a valid "claim." Therefore, the regulations implementing the CDA, the relevant contract provisions, and the facts surrounding a particular submission to the CO provide the basis for determining whether the submission is sufficient to establish a claim under the CDA. *Dawco*, 930 F.2d at 877.

The Federal Acquisition Regulations (FAR), which implement the CDA, define a "claim" as follows:

> *Claim* ... means a written demand or written assertion by one of the contracting parties seeking, as a matter of right, the payment of money in a sum certain.... A voucher, invoice, or other

---

**2.** The CDA applies to the instant case, notwithstanding the modification of June 30, 1986, in which the parties substituted Rockwell for defendant in their contract. In modifying the contract, the parties specifically elected to retain the disputes clause as worded in the original contract. Thus, even after the modification the parties agreed that the contract was subject to the CDA, and that pursuant to the disputes clause plaintiff could assert claims against defendant. *See* 48 C.F.R. § 52.233–1, *Alternate* I

(APR 1984) (setting forth instant disputes clause). In these circumstances, the parties remained in privity of contract after the modification, and, therefore, the CDA applies. *See Arntz Constr. Co.*, EBCA No. 187–12–81, 84–3 BCA ¶ 17,604, *aff'd*, 769 F.2d 770 (Fed.Cir.1985); *see also United States v. Johnson Controls, Inc.*, 713 F.2d 1541, 1550 (Fed.Cir.1983) (requiring privity of contract between a subcontractor and the government for jurisdiction under the CDA).

routine request for payment that is not in dispute when submitted is not a claim. [Emphasis in original.]

48 C.F.R. § 33.201 (1988); *see also Essex Electro Eng'rs, Inc. v. United States,* 960 F.2d 1576, 1580–1581 (Fed.Cir.1992) (upholding the FAR's definition of "claim"). This definition was repeated almost word-for-word in the contract's disputes clause. *See* FAR 52.233–1, *Alternate* 1 (APR 1984).

█ The FAR language and the disputes clause have been construed to require, as a threshold to asserting a valid claim, that a contractor and the government contracting agency must already be in dispute over the amount requested at the time of submission. *Dawco,* 930 F.2d at 878. Once a dispute exists, the contractor need not use any particular form or wording in submitting a claim. "All that is required is that the contractor submit in writing to the contracting officer a clear and unequivocal statement that gives the contracting officer adequate notice of the basis and amount of the claim." *Contract Cleaning Maintenance, Inc. v. United States,* 811 F.2d 586, 592 (Fed.Cir.1987). Nonetheless, a claim must contain, expressly or implicitly, a written demand or assertion of a legal right to payment of money in a sum certain, and a request for a decision from the CO. *Essex Electro,* 960 F.2d at 1580; *Dawco,* 930 F.2d at 877; *Mingus Constructors, Inc. v. United States,* 812 F.2d 1387, 1395 (Fed.Cir.1987); *Tecom, Inc. v. United States,* 732 F.2d 935, 936–37 (Fed.Cir.1984); *RSH Constructors, Inc. v. United States,* 14 Cl.Ct. 655, 657 (1988). A mere proposal for settlement represents an invitation to negotiate and does not constitute a claim. *Mayfair Constr. Co. v. United States,* 841 F.2d 1576, 1577 (Fed.Cir.), *cert. denied,* 488 U.S. 980, 109 S.Ct. 528, 102 L.Ed.2d 560 (1988).

█ Plaintiff contends that the June 20, 1990, letter constituted a valid claim. Plaintiff avers that as of the issuance of Rockwell's "final determination" letter dated June 8, 1988, the parties were in dispute. Further, the demand for payment from the DOE in the June 20, 1990 letter was a written demand for payment of a sum certain and, implicit in that demand, was a request for a final decision from the CO. Finally, plaintiff contends that its claim was submitted to the CO. Plaintiff alleges that the claim was addressed to the DOE and there is no evidence that the CO did not receive the claim. Alternatively, plaintiff asserts that the receipt of the claim by Brad Smith, Chief Counsel for EG & G, fulfills the CDA's submission requirement. Defendant challenges each of these contentions.

█ The June 20, 1990, letter fails to fulfill the CDA's requirements. As a threshold matter, the parties were never in dispute over the amount of money requested in the letter. For purposes of the CDA, a dispute arises only when the parties have reached an impasse in their negotiations. *Dawco,* 930 F.2d at 878–79; *Robin Indus., Inc. v. United States,* 22 Cl.Ct. 448, 453 (1991). At this point, the contractor may opt for "discontinuing negotiations ... in favor of seeking a final decision by the contracting officer." *Dawco,* 930 F.2d at 879.

As evidence that the parties were in dispute, plaintiff cites its negotiations with Rockwell beginning in September 1987 and culminating in Rockwell's "final determination" letter of June 8, 1988. However, under the CDA, the FAR, and the contract's dispute clause, a dispute must exist with the contracting agency, not another contracting party, before a claim may be asserted. *See Dawco,* 930 F.2d at 878.

Any attempt in June 1990, to assert a claim against the DOE was premature as there is no indication that a dispute existed between plaintiff and the DOE. The evidence cited by the parties indicates that plaintiff's November 8, 1988, letter to the CO for the DOE was the first, and only, communication between the parties concerning plaintiff's "claims" against the DOE. Thus, there is no evidence of negotiations between the parties. Moreover, no evidence has been cited indicating that the DOE ever disputed, or otherwise commented on, plaintiff's "claims." On these facts, an impasse in negotiations was never reached; therefore, plaintiff and the DOE

were not in dispute as of June 20, 1990. *See Dawco*, 930 F.2d at 878.

The absence of a dispute is also supported by the language of the June 20, 1990, letter and the facts surrounding its issuance. EG & G had assumed Rockwell's contract with plaintiff only as of January 1990. After the contract's transfer, plaintiff requested a meeting with EG & G to discuss its claims. At that meeting, held in May 1990, plaintiff alleges that Brad Smith, Chief Counsel for EG & G, instructed plaintiff to submit a claim to the CO. Plaintiff further avers that the June 20, 1990 letter constituted that claim. The June 20, 1990 letter, however, is addressed to Smith, not the CO for the DOE. The letter purports to comply with a request from Smith for additional documentation, not to assert a claim against the DOE. In fact, neither the letter nor the supporting documentation contests the DOE's position. Finally, in concluding the letter, plaintiff expresses its willingness to discuss the "matter" further with Smith, an endeavor that would be pointless if a claim had in fact been asserted against the DOE. Thus, the language of the June 20, 1990 letter, evaluated in context, evidences an attempt to initiate negotiations with EE & G, not the existence of a dispute with the DOE.

■ Jurisdiction under the CDA is further precluded since plaintiff's June 20, 1990, letter fails to request a final decision of the CO, nor can such a request be implied from the letter's certification and demand for payment from the DOE. A request for a final decision can be implied only where negotiations have clearly ceased, and the government contracting agency and the contractor have unequivocally taken contrary positions. *See, e.g., Cubic Corp. v. United States*, 20 Cl.Ct. 610 (1990). In this case, negotiations had yet to begin and the contracting agency had yet to assert its position. In these circumstances, the certification and demand for payment are best characterized as an attempt to spur negotiations, not as a request for a final decision. *Dawco*, 930 F.2d at 879.

■ In addition to omitting a request for a final decision of the CO, plaintiff failed to submit the June 20, 1990, letter to the CO for a final decision. Under the CDA, the contractor must ensure that the claim is submitted to the CO for a final decision. 41 U.S.C. § 605(a); *Neal & Co. v. United States*, 945 F.2d 385, 388 (Fed.Cir.1991). The contractor is not required to address or deliver its claim personally to the CO. *Neal & Co.*, 945 F.2d at 388–89, *Dawco*, 930 F.2d at 879–80. The CDA requires only that "once a claim is made, the parties must 'commit' the claim to the contracting officer and 'yield' to his authority to make a final decision." *Dawco*, 930 F.2d at 880. To this end, the contractor need only ensure that the CO receives the claim, but bears the risk of any failure or delay in delivery. *Neal & Co.*, 945 F.2d at 388–89; *Dawco*, 930 F.2d at 880; *Robin Indus.*, 22 Cl.Ct. at 455. However, the contractor is not responsible for agency misdirection of a claim properly addressed to the CO. *Wallace O'Connor Int'l, Ltd. v. United States*, 23 Cl.Ct. 754, 758 (1991).

Plaintiff alleges that the CO received the June 20, 1990 letter, and relying on *Dawco, supra*, maintains that the receipt of the letter by the CO was sufficient to fulfill the CDA's submission requirement. Plaintiff, however, has not produced any evidence that the CO actually received the letter. Instead, plaintiff has provided evidence that the letter was properly addressed and sent directly to the DOE. To counter plaintiff's allegation, defendant has provided the declaration of Patricia A. Thelander, manager of the DOE mailroom to which plaintiff addressed its letter. According to Thelander, any letter received at the mailroom addressed to the DOE "via EG & G Colorado Corporation, Attention: Mr. Brad Smith, Chief Counsel," would have been forwarded to EG & G for delivery to Smith.

Plaintiff cannot rely on the mere fact of mailing the June 20, 1990, letter to establish that it was received by the CO. "[A] letter which is properly sealed, stamped, addressed, and deposited in the United States Mails is presumed to reach the addressee and be received by him in due course of the mails." *Charlson Realty Co.*

*v. United States,* 181 Ct.Cl. 262, 274, 384 F.2d 434, 442 (1967); *accord Rosengarten v. United States,* 149 Ct.Cl. 287, 291, 181 F.Supp. 275, 277, *cert. denied,* 364 U.S. 822, 81 S.Ct. 60, 5 L.Ed.2d 53 (1960). However, plaintiff improperly addressed the letter to the attention of Smith, not the CO. Therefore, plaintiff cannot rely on the presumption that a properly addressed letter is received to establish the CO's receipt of the June 20, 1990, letter. *E.g., Stache v. International Union of Bricklayers,* 852 F.2d 1231 n. 2 (9th Cir.1988), *cert. denied,* 493 U.S. 815, 110 S.Ct. 64, 107 L.Ed.2d 32 (1989); *Rosengarten,* 149 Ct.Cl. at 291–92, 181 F.Supp. at 277–78.

In addition, Thelander's declaration is sufficient to establish a presumption that the DOE mailroom forwarded the June 20, 1990, letter to Smith, and, therefore, the CO for the DOE never received the letter. On providing evidence of regular office practice and procedure, a presumption arises that such practice and procedure was followed on a given occasion. *E.g., Meckel v. Continental Resources Co.,* 758 F.2d 811, 817 (2d Cir.1985); *Charlson Realty,* 181 Ct.Cl. at 277, 384 F.2d at 444; *Rosengarten,* 149 Ct.Cl. at 292, 181 F.Supp. at 278. Defendant has supplied evidence that pursuant to the practice and procedure of the DOE mailroom, the June 20, 1990, letter would have been forwarded to Smith. As plaintiff has failed to adduce any proof to the contrary, the June 20, 1990, letter is presumed to have been forwarded to Smith, not the CO.

On these facts, plaintiff cannot rely on *Dawco.* In that case, the court rejected the argument that the contractor must address or deliver a claim personally to the CO to satisfy the CDA's submission requirement. The court reasoned that the CDA requires only that contractors commit their claims to the CO for a final decision. Therefore, the court concluded, the CO's receipt of a claim that had been forwarded by agency personnel satisfied the submission requirement in the CDA. *Dawco, 930 F.2d at 879–80. In this case, there is no evidence that the CO received the claim, and, therefore,* Dawco *is inapplicable.*

Relying on *Neal & Co., supra,* and *Wallace O'Connor, supra,* plaintiff contends, in the alternative, that Smith's receipt of the June 20, 1990, letter fulfilled the CDA's submission requirement. However, plaintiff's reliance is misplaced. In *Neal & Co.,* plaintiff sent a claim specifically requesting a final decision of the CO to the Resident Officer in Charge of Construction, who in fact timely delivered the claim to the CO. The court concluded that plaintiff had fulfilled the CDA's submission requirement. *Neal & Co.,* 945 F.2d at 388–89. In this case, plaintiff did not specifically request a final decision of the CO, and Smith did not forward the June 20, 1990, letter to the CO for a final decision. Accordingly, *Neal & Co.* does not apply to the facts of this case.

*Wallace O'Connor* is also inapplicable on these facts. In that case, the letter was properly addressed to the CO and received in the mailroom of the contracting agency, but never delivered to the CO. Thus, the agency was responsible for the CO's failure to receive the letter. As a result, the court held that plaintiff had met the CDA's submission requirement. *Wallace O'Connor,* 23 Cl.Ct. at 758. In this case, the mailroom followed its normal procedures, but because plaintiff directed the letter to Smith, the mailroom forwarded the letter to EG & G for delivery to Smith. Therefore, plaintiff was responsible for the CO not receiving the letter. Hence, plaintiff cannot rely on *Wallace O'Connor* to establish compliance with the CDA.

In this case, plaintiff bore the risk that the CO would not receive the June 20, 1990, letter. Although plaintiff addressed the letter to the DOE, plaintiff directed the letter to the attention of Smith, instead of the CO. Consequently, Smith received the letter, not the CO. In the letter, plaintiff did not request a final decision of the CO or otherwise indicate that such a decision was desired. After receiving the letter, Smith did not forward the letter to the CO. On these facts, the CDA's submission requirement was not met.

If, then, the June 20, 1990, letter was not a claim, the issue arises whether any other

letter in the record qualifies as a claim under the CDA. *See Dawco,* 930 F.2d at 878. The only other letter that need be considered is plaintiff's November 8, 1988, letter addressed to the CO for the DOE asserting "claims" against the government, and it too fails to qualify as a claim. That letter is inadequate as it did not arise from a dispute with the DOE. On the evidence before the court, the letter was the first written communication to the CO since Rockwell's "final determination" letter of June 8, 1988, and, as such, did not stem from an impasse in negotiations with the DOE. The letter failed to supply any supporting documentation providing an adequate basis for the claims asserted. Further, the letter neither demanded payment of a monetary sum certain, nor did it request a final decision from the CO. Instead, the letter expressed plaintiff's intent to take whatever steps were necessary to perfect the claim. Finally, plaintiff failed to include a certification in the letter as required by the CDA. *See* 41 U.S.C. § 605(c)(1).

In these circumstances, the November 8, 1988, letter is best characterized as a cost proposal designed to initiate negotiations, not a claim under the CDA. As such, the letter may have ultimately led to a dispute, but did not, by itself, satisfy the CDA's dispute requirement. *Dawco,* 930 F.2d at 878. Thus, the November 8, 1988, letter did not constitute a valid claim.

### Conclusion

For the above reasons, defendant's motion to dismiss for lack of subject matter jurisdiction is granted. Accordingly, the clerk is directed to dismiss the complaint without prejudice. No costs.