**WEST COAST GENERAL CORPORATION, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 354–88C.**

United States Claims Court.

Dec. 18, 1989.

Robert J. Marks, San Diego, Cal., for plaintiff.

Anthony H. Anikeeff, Washington, D.C., with whom was Acting Asst. Atty. Gen. Stuart E. Schiffer, for defendant.

## OPINION

MARGOLIS, Judge.

The plaintiff in this direct access action is a contractor who seeks an equitable adjustment under the Contract Disputes Act of 1978 (CDA or Act), 41 U.S.C. § 601 *et seq.*, in the amount of $209,952. Plaintiff alleges that the defendant United States required it to perform work which was not required by the contract. Defendant has moved to dismiss on the ground that this court lacks jurisdiction because plaintiff failed to submit a proper claim to the contracting officer as required by the CDA. After considering the entire record and after oral argument, this court finds that the plaintiff failed to comply with the mandatory requirements of the Contract Disputes Act. Because this court lacks subject matter jurisdiction, the defendant's motion to dismiss is granted.

## FACTS

On August 19, 1986, the Western Division of the Naval Facilities Engineering Command, Department of the Navy (Navy), issued an invitation for bids for the construction of a phase of the Landing Craft Air Cushion Complex at the Marine Corps Base, Camp Pendleton, California. The solicitation was amended twice. The second amendment, among other things, directed

that drawing "P-03," entitled "G.S.E. Shed, Fuel Farm & Wash Rack Paving Plans," be deleted from one of the indices of drawings to the solicitation.

On November 6, 1986, the Navy awarded Contract No. N62474-83-C-2729 to the plaintiff, West Coast General Corporation (West Coast). In letters addressed to the Resident Officer in Charge of Construction (ROICC), dated January 30, 1987 and February 6, 1987, West Coast alleged that the pre-award amendment to the solicitation deleted the requirement for paving around the G.S.E. Shed and Fuel Farm. Plaintiff further noted that it had not included that work in its cost estimate when submitting its bid. The ROICC responded to both of these letters by disagreeing with plaintiff as to the effect of the amendment, and directing plaintiff to complete all of the paving.

On February 27, 1987, plaintiff sent the ROICC a letter reiterating its view of the contract, setting forth its estimate of the cost of the disputed work, and requesting a change order. That letter also asked the ROICC to "[p]lease advise us as to whether procedures should be initiated to submit this matter to claims or if other steps can be taken." In response, the ROICC sent a letter dated March 9, 1987, in which he again disagreed and ordered West Coast to proceed with the paving. That letter suggested that recourse was available under the Disputes clause contained in FAR 52.-233-1.

On March 27, 1987, West Coast submitted an Estimate For Change Order, indicating that the change order was being submitted under the FAR Disputes clause. The contractor submitted a claim certification in support of the request. On April 16, 1987, the ROICC asked the plaintiff to submit a Contract Pricing Proposal Cover Sheet and a Truth in Negotiations statement, both of which West Coast completed and returned to the ROICC on April 21, 1987.

On April 22, 1987, the ROICC sent a letter which eliminated part, but not all, of the work in dispute. That letter indicated that the plaintiff's "claim package ... has been forwarded to Western Division Naval Facilities Engineering Command for a Contracting Officer's final decision." On May 4, 1987, in response to the deletion of some of the work, plaintiff submitted a revised Estimate For Change Order in the amount of $175,471. That change order was not separately certified.

On June 17, 1987, the contracting officer issued Final Decision WD 49-87, denying plaintiff's claim in its entirety. That decision informed the plaintiff of its right of appeal either to the Armed Services Board of Contract Appeals (ASBCA) or to the United States Claims Court. On June 16, 1988, plaintiff filed the instant action against the United States, acting through the Department of the Navy, to recover an equitable adjustment for the work performed under protest.

Defendant alleges that West Coast's claim was defective in four respects: it was not submitted directly to the contracting officer; it did not assert any specific rights or basis for the specific monetary relief; it did not request a final decision; and the claim was not properly certified. Defendant's theory is that the plaintiff failed to submit a proper claim, and therefore the contracting officer's decision was not a final decision upon which this court's jurisdiction could be based. Plaintiff claims that its submission met all criteria and was a proper claim.

## DISCUSSION

The Contract Disputes Act requires that "[a]ll claims by a contractor against the government relating to a contract shall be in writing and shall be submitted to the contracting officer for a decision." 41 U.S.C. § 605(a). The contractor's claim submission under the Act is a mandatory prerequisite to Claims Court jurisdiction. *Gardner Machinery Corp. v. United States*, 14 Cl.Ct. 286, 290 (1988). There are four basic elements contained in the language of the subsection: 1) there must be a claim; 2) it must be in writing; 3) it must be sent to the contracting officer; and 4) it must request a final decision.

This court has consistently held that the contracting officer's final decision is the "linchpin" for appealing claims under the Contract Disputes Act. *Paragon Energy Corp. v. United States,* 227 Ct.Cl. 176, 177, 645 F.2d 966, 967 (1981). The contracting officer cannot issue a valid final decision without first receiving a properly submitted claim. 227 Ct.Cl. at 184, 645 F.2d at 971; *T.J.D. Services, Inc. v. United States,* 6 Cl.Ct. 257, 262 (1984).

The Disputes clause incorporated into the contract in this case states in pertinent part:

52.233-1 Disputes

(c) "Claim," as used in this clause, means a written demand or written assertion by one of the contracting parties seeking, as a matter of right, the payment of money in a sum certain, *the adjustment or interpretation of contract terms,* or other relief arising under or relating to this contract. . . .

(d)(1) A claim by the Contractor shall be made in writing and *submitted to the Contracting Officer* for a written decision.

(Emphasis supplied.)

No particular language is required to create a "claim." All that is required is that the contractor submit in writing to the contracting officer a *clear and unequivocal statement* that gives the contracting officer adequate notice of the basis and amount of the claim. *Contract Cleaning Maintenance, Inc. v. United States,* 811 F.2d 586, 592 (Fed.Cir.1987) (emphasis supplied). Factors to be considered are whether the contractor asserted specific rights, requested specific relief, and requested that the contracting officer render a final decision. *See Tecom, Inc. v. United States,* 732 F.2d 935, 936 (Fed.Cir.1984); *Z.A.N. Co. v. United States,* 6 Cl.Ct. 298, 304 (1984). When appropriate, a series of letters can be read together to comprise a clear and unequivocal statement giving contracting officer notice of the basis for the contractor's claim. *Alliance Oil & Refining Co. v. United States,* 13 Cl.Ct. 496, 499 (1987), *aff'd.,* 856 F.2d 201 (1988).

In its letters of February 6, 1987 and before, plaintiff advanced its legal theory asserting its right to a contract adjustment, but was clearly still seeking an informal resolution to the matter. In its February 27, 1987 letter, plaintiff indicated that it maintained its position expressed in its letters dated January 30, 1987 and February 6, 1987, effectively incorporating those letters by reference. In its February 27, 1987 letter, the plaintiff set forth its estimate of the cost of the disputed work and again requested a change order. This letter falls short of making a request for a final decision because it equivocated by asking whether the matter should be submitted to claims or whether other steps should be taken.

However, in its letters of March 27, 1987 and May 4, 1987, plaintiff asserted in writing its right to an adjustment of the contract terms as required by the Disputes clause. Those letters referenced the work in question, and contained plaintiff's assertion that the work had been deleted by the solicitation amendment. In addition, the contractor certified the March 27, 1987 claim as required under the FAR and the Act. The plaintiff set forth its estimated cost of the disputed work, specifically noted that the change order request was being submitted under the Disputes clause and consistently used the word "claim" in its correspondence. Once again, no magic words are required by the statute. The Court of Claims has held that an "expressed interest" in a final decision is sufficient. *Paragon,* 227 Ct.Cl. at 192, 645 F.2d at 976. The court finds that, although the contractor never used the phrase, "I hereby request a final decision," the letter of March 27, 1987 was nonetheless a request for a final decision under the CDA.

■ However, even though it is possible to find that the letters can be read together so as to comprise a "claim," *see Alliance Oil, supra,* the cause of action must still fail, because the correspondence in question was not submitted to the contracting officer. Plaintiff concedes that none of its letters were sent to the contracting officer,

but rather, to the Resident Officer in Charge of Construction.

Plaintiff points out that the contracting officer apparently received plaintiff's claim package forwarded by the ROICC. However, the Act requires that the claim be *submitted to the contracting officer.* Plaintiff attempts to characterize this requirement as a meaningless formality. With this position the court must disagree. Strict compliance with the Act is important so that the contracting officer will know what he is dealing with, and what he is expected to do. *Technassociates, Inc. v. United States*, 14 Cl.Ct. 200, 209 (1988).

■ Plaintiff also notes that the contracting officer did indeed issue a final decision. The fact that a contracting officer purports to issue a final decision will not satisfy the CDA, where the contractor has failed to comply with the Act's submission requirements. *RSH Constructors, Inc. v. United States*, 14 Cl.Ct. 655, 659 (1988); *Z.A.N. Co.*, 6 Cl.Ct. at 304–305; *T.J.D. Services*, 6 Cl.Ct. at 263. The contracting officer has no authority to waive a requirement that Congress has imposed. *Id. See also Gardner Machinery*, 14 Cl.Ct. at 290 n. 1.

It would be inappropriate for the court to permit correspondence sent to the ROICC to substitute for the requirement that the claim be submitted to the contracting officer who is, by statute, the person responsible for deciding contract disputes. Under plaintiff's theory, a contractor could send his claim to any government employee, however remotely connected with the contract, in the hope that the claim would eventually be forwarded to the contracting officer having authority to decide the claim. While it is possible that Navy procedures for forwarding claims to the proper contracting officer are failsafe, and that claims never go astray by virtue of those procedures, the same cannot be said for all agencies.

The submission of a claim to the contracting officer ends the negotiations phase of a dispute and triggers formal proceedings under the CDA. For example, it is the submission of a claim *to the contracting officer* which starts the clock on the 60–day period within which the contracting officer must respond to the claim. 41 U.S.C. § 605(c), FAR 52.233–1(e). It is the date of the submission of a claim *to the contracting officer* from which prejudgment interest accrues. 41 U.S.C. § 611, FAR 52.233–1(g). The submission of the claim to the contracting officer is not a meaningless requirement of the CDA. Quite the contrary, it is a critical element of the statutory scheme.

In short, West Coast General has not as yet submitted its claim to the contracting officer. This omission is fatal to the instant suit. Each of the various requirements of the Contract Disputes Act has been strictly construed by this Court. *See e.g., RSH Constructors*, 14 Cl.Ct. 655; *Technassociates*, 14 Cl.Ct. 200; *Hoffman Construction Co. v. United States*, 7 Cl.Ct. 518 (1985), and many others.* Although such a construction compels plaintiff to exhaust its administrative remedies before refiling in this court, the plain language of the CDA requires that all elements of the statute be met before this court has jurisdiction to hear the plaintiff's complaint.

Because the plaintiff never submitted a proper claim to the contracting officer under the Contract Disputes Act, the contracting officer's final decision is invalid, and cannot be used as a predicate for jurisdiction in this forum. The court need not address defendant's contention regarding improper certification because, even if plaintiff's certification was proper, the underlying claim was not submitted to the contracting officer, and therefore was insufficient to meet the statutory requirement. Therefore, the complaint will be dismissed without prejudice.

When a contractor's claim is dismissed without prejudice for lack of jurisdiction, the contractor should exercise great care in

---

* Plaintiff points out that some Boards of Contract Appeals have applied a somewhat looser construction of CDA requirements under § 605(a). To the extent that those cases are similar to this one, the court notes that board decisions are not controlling precedent for the Claims Court.

meeting the CDA requirements by preparing a sufficiently precise claim, demanding a specific amount, and specifically requesting a final decision by the contracting officer. The contractor should then properly certify the claim, if necessary, and resubmit the claim to the contracting officer. If the contracting officer's final decision is again adverse to West Coast, it may then appeal either to the ASBCA or to this Court. *Technassociates*, 14 Cl.Ct. at 212.

## CONCLUSION

For the reasons stated above, this court lacks subject matter jurisdiction over this case. Accordingly, the Clerk will grant the defendant's motion and dismiss the complaint without prejudice. Each party will bear its own costs.