**AMERICAN PACIFIC ROOFING COMPANY, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 1–89 C.

United States Claims Court.

July 31, 1990.

Richard D. Corona, San Diego, Cal., for plaintiff.

Mark A. Melnick, Washington, D.C., with whom was Stuart M. Gerson, Asst. Atty. Gen., for defendant.

## OPINION

RADER, Judge.

In this case arising under the Contract Disputes Act (CDA or the Act), 41 U.S.C. § 609(a)(1) (1988), plaintiff, American Pacific Roofing, Co., seeks a price adjustment to a construction contract performed for the Department of the Navy (the Navy). Plaintiff also alleges that the Navy wrongfully withheld payments. Defendant has counterclaimed for reprocurement costs and water damage.

Defendant moved for partial summary judgment. Defendant contends that this court lacks jurisdiction under the CDA because plaintiff did not properly submit its claim to the contracting officer (CO). Following oral argument, this court denies defendant's motion.

*Facts*

Plaintiff entered into a roofing contract with the Navy for buildings at the Naval Postgraduate School. The contract required plaintiff to install new waterproofing on the roof. After plaintiff's performance, the roof allegedly continued to leak. In October 1987, the Navy directed plaintiff to repair these leaks.

On November 11, 1987, plaintiff submitted a claim for the repair costs. The claim requested a final decision from the CO. Plaintiff sent this claim to the Resident Officer in Charge of Construction (ROICC). Addressing the claim to the ROICC complied with plaintiff's contract. Plaintiff's contract stated that "requests for payment should be directed to the Officer in Charge of Construction...." Contract No. N 62474–85–C–7492, at 1, *reprinted in* Plaintiff's Brief, No. 1–89 C, filed May 1, 1990 (Pl.Br.), at 2.

The ROICC forwarded the claims to the CO according to Navy procedure. By letter dated July 13, 1988, the CO denied this claim. The CO rejected the claim because plaintiff did not provide a leakproof roof, nor honor its warranty.

On November 13, 1987, plaintiff addressed another claim to the ROICC requesting a decision by the CO. Plaintiff claimed that the Navy had withheld wrongfully $57,815.00 in payments. The ROICC forwarded this claim to the CO in June, 1988.[1] By final decision, dated July 12, 1989, the CO denied plaintiff's claim. At that time, defendant also asserted a counterclaim against plaintiff for additional repairs to the roof and water damage. The Navy seeks $62,600.00 in damages.

Plaintiff filed a complaint in the United States Claims Court pursuant to the direct access provision of the CDA. 41 U.S.C. § 609(a)(1). Defendant moved for partial dismissal of plaintiff's claims under RUSSC 12(b)(1) alleging that this court lacks subject matter jurisdiction. Defendant argues that plaintiff did not submit a claim directly to the CO as required by the statute. Therefore, defendant contends that this

---

1. Two months later, plaintiff amended its claim. The amount claimed now totals $71,986.00.

court lacks jurisdiction. Plaintiff responds that it has fulfilled the requirements of the CDA.

### Discussion

When evaluating a motion to dismiss for lack of subject matter jurisdiction, the court "may consider relevant evidence in order to resolve the factual dispute." *Reynolds v. Army and Air Force Exchange Service*, 846 F.2d 746, 747 (Fed.Cir. 1988). Moreover, where the court's jurisdiction is put in question, plaintiff "bears the burden of establishing subject matter jurisdiction by a preponderance of the evidence." *Reynolds*, 846 F.2d at 748.

The CDA's provision for direct access to the Claims Court requires the contractor to submit a claim in writing to the CO. 41 U.S.C. § 605(a). The contractor must describe the basis for the claim with specificity and must demand a CO decision. *J.M.T. Machine Co. v. United States*, 826 F.2d 1042, 1045 (Fed.Cir.1987). Further, the CO must issue a final decision before the Claims Court has jurisdiction. 41 U.S.C. § 609; *Paragon Energy Corp. v. United States*, 227 Ct.Cl. 176, 181, 645 F.2d 966, 970 (1981), *aff'd*, 230 Ct.Cl. 884 (1982).[2]

If the contractor does not submit a claim in accordance with the statutory prerequisites, the CO's purported decision does not establish Claims Court jurisdiction. An improper claim does not establish Claims Court jurisdiction under the CDA. *Paragon Energy*, 645 F.2d at 971; *RSH Constructors, Inc. v. United States*, 14 Cl.Ct. 655, 659 (1988); *Straga v. United States*, 8 Cl.Ct. 61, 66 (1985). The CO may not waive CDA requirements imposed by Congress. *RSH Constructors*, 14 Cl.Ct. at 659. Thus, defendant's motion asks this court to determine whether plaintiff properly submitted its claims to the CO.

The CDA itself sets forth the requirement for Claims Court jurisdiction:

> All claims by a contractor against the government relating to a contract shall be in writing and shall be submitted to the contracting officer for a decision.

41 U.S.C. § 605(a). This language, by its terms, requires the contractor to put its claims in writing and to ensure their submission to the CO for a decision. The CDA does not say that the contractor must send the claim directly to the CO. Rather, the Act requires that the written claim "be submitted" to the CO. 41 U.S.C. § 605(a).

The term "submit" means "to commit to another (as for decision or judgment)." WEBSTER'S NEW COLLEGIATE DICTIONARY, 1975, p. 1160. "Submit" is not entirely synonymous with the words "address" or "directly send." A contractor may submit a claim without necessarily sending the papers directly to the CO. The contractor, however, must clearly commit the claim to the CO for a final decision.

To the extent that the terms "be submitted to the contracting officer" seem ambiguous, the legislative history explains further Congress's intent:

> [I]n the disputes and remedies area, the procuring agencies should have flexibility in deciding what role the contracting officer will have. Most importantly, the agencies, whatever role they decide to give the contracting officer, must make clear that role to the contractor. Thus, if for one reason or another, the contracting officer is not the primary decision maker on a contract matter, the Government must tell the contractor this, and tell the contractor who is making the decision. From this course of action the contractor will at all times know with whom he is dealing in matters under dispute. It is expected that procedures will be established by the agencies to

---

2. This system is designed to provide an equitable means for dispute resolution. The Senate report stated:

> The Contract Disputes Act of 1978 provides a fair, balanced, and comprehensive statutory system of legal and administrative remedies in resolving Government contract claims.

> The act's provisions help to ... insure fair and equitable treatment to contractors and Government agencies.

S.REP. NO. 1118, 95th Cong., 2d Sess. 1 (1978), *reprinted in* 1978 U.S.Code Cong. & Admin. News 5235.

carry out this recommendation and course of action.

S.REP. NO. 1118, 95th Cong., 2d Sess. 1, at 22 (1978), *reprinted in* 1978 U.S.Code Cong. & Admin. News 5235, 5256. Thus Congress left the language of 41 U.S.C. § 605 broad to account for delegations of CO authority and different policies from agency to agency. Accordingly, Congress did not require a contractor to send its written claims directly to the CO. Rather, Congress crafted the wording of § 605 to permit appropriate Government officers to receive written claims and forward them to the CO.

■ The Act, however, did not start the clock on the CO's response period until actual receipt of the submission by the CO. 41 U.S.C. § 605(c). Thus, the CDA accounts for any delays or failures in the submission process. The Act requires the CO to make a decision "within sixty days of *receipt* of a submitted claim." 41 U.S.C. § 605(c)(2) (emphasis added). Until receipt of the submission, the CO is under no obligation to act. The contractor bears the risk for delayed or lost submissions prior to receipt by the CO.

■ In the case at bar, plaintiff sent its written claim to the ROICC. The claim document explicitly requested a final decision from the CO. The ROICC, as strictly required by Navy procedures, forwarded the claims to the CO. These actions satisfied the terms of § 605(a). In fact, plaintiff's claim was "submitted to the contracting officer for a decision." 41 U.S.C. § 605(a). Plaintiff committed its written claim to the CO for a final decision.

Defendant argues that § 605 requires plaintiff to send the claim directly to the CO. Defendant, in effect, asks this court to strike Congress's broad terms and substitute the narrower words "sent or addressed directly to the contracting offer." The statute simply does not include the requirements for which defendant contends.

Defendant relies heavily on the Claims Court decision in *West Coast General Corp. v. United States,* 19 Cl.Ct. 98 (1989). In *West Coast,* the plaintiff submitted several letters to the ROICC asserting that it had performed additional work. West Coast General Corporation, however, did not request a final decision by the CO. Moreover, West Coast General Corporation did not assert any specific basis for monetary relief, nor properly certify its claim. *West Coast,* 19 Cl.Ct. at 99. This ambiguous document could easily confuse a CO about "what he is dealing with, and what he is expected to do." *West Coast,* 19 Cl.Ct. at 101. West Coast General Corporation's purported claim submission had the hallmarks of the typical written bickering that often accompanies routine contract administration. West Coast General Corporation did not clearly commit a written claim to the CO for final decision. In the face of these potentially confusing circumstances, the Claims Court properly determined that plaintiff's claim was not submitted to the CO. *West Coast,* 19 Cl.Ct. at 101–02.

In the case at bar, plaintiff requested in writing a final decision by the CO. Plaintiff then sent its claim to the ROICC for transmission to the CO. Plaintiff's contract advised it to direct all "requests for payment" to the ROICC. The ROICC, following Navy procedure, forwarded the request for a final decision to the CO. Plaintiff thus committed the written claim to the CO for a final decision. This action was not routine bickering, but a formal submission. The CO received the claim and issued a final decision. Plaintiff satisfied § 605(a).

The CDA requires the CO to take action "within sixty days of *receipt* of a submitted certified claim...." 41 U.S.C. § 605(c)(2) (emphasis added). In the case at hand, plaintiff addressed its claims to the ROICC in November 1987. The ROICC forwarded these claims to the CO in June 1988. Thus, the CO had 60 days from his receipt of the claims in June in which to respond.

Additionally, the statute states that interest on amounts found due to contractors accrues "from the date the contracting officer *receives* the claim pursuant to section 605(a)...." 41 U.S.C. § 611 (emphasis

added).[3] Therefore, if plaintiff ultimately prevails in this action, this court will compute interest on the award from June 1988, not November 1987.

### Conclusion

Plaintiff's claim was properly submitted to the CO. Accordingly, this court denies defendant's partial motion to dismiss this case for lack of subject matter jurisdiction.

The parties shall file a Joint Status Report within 30 days of this opinion, apprising the court of the progress of litigation.

---

**3.** The Senate Report guides the court in determining interest charges:

> [A court] must be very sensitive when fixing a date from which to start interest charges not to allow undue delay in a contractor's notification of a claim to the contracting officer to be of a benefit to the contractor.

S.REP. NO. 1118, 95th Cong., 2d Sess. 1, at 32 (1978), *reprinted in* 1978 U.S.Code Cong. & Ad-min. News 5235, 5266. The Senate specifically referred to contractor delay from the time the contractor identified the claim to the time it notified the CO. Delays in the submission process are analogous. In the absence of clear Government fault, a contractor should not reap a benefit from submission delays.