**TRI–AD CONSTRUCTORS, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 90–217C.**

United States Claims Court.

Nov. 9, 1990.

Daniel B. Hoye, San Francisco, Cal., for plaintiff.

J. Andrew Jackson, with whom were Asst. Atty. Gen. Stuart M. Gerson, David M. Cohen, Director, and Thomas W. Peterson, Asst. Director, Washington, D.C., for defendant. Ellen M. Evans, Dept. of the Navy, General Counsel's Office, of counsel.

## OPINION

ANDEWELT, Judge.

In this government contract action filed pursuant to the Contract Disputes Act (CDA), 41 U.S.C. § 601 *et seq.*, plaintiff, Tri–Ad Constructors (Tri–Ad), seeks damages relating to its contract (N62474–86–C–1002) with the Department of the Navy (the Navy) for construction work at San Nicolas Island Naval Air Station, California. This action is presently before the court on defendant's motion to dismiss the complaint pursuant to RUSCC 12(b)(1). Defendant contends this court lacks subject matter jurisdiction because plaintiff never submitted a proper claim to the contracting officer and, in any event, the contracting

officer never issued a final decision on the claim.

## I.

The CDA sets forth the pertinent jurisdictional requirements. Section 605(a) provides: "All claims by a contractor ... relating to a contract shall be in writing and shall be submitted to the contracting officer for a decision." The contractor may secure review of a contracting officer's decision denying such a claim through either an appeal to the appropriate agency board of contract appeals (Section 607) or a direct action in the United States Claims Court (Section 609). While a final decision by the contracting officer is a jurisdictional prerequisite to seeking such review, Section 605(c)(5) provides: "Any failure by the contracting officer to issue a decision on a contract claim within the period required will be deemed to be a decision by the contracting officer denying the claim and will authorize the commencement of the appeal or suit on the claim...." For claims over $50,000, Section 605(c) establishes the time period requirement, which commences upon the contracting officer's receipt of a submitted certified claim. Section 605(c) provides, in pertinent part:

(2) A contracting officer shall, within 60 days of receipt of a submitted certified claim over $50,000—

(A) issue a decision; or

(B) notify the contractor of the time within which a decision will be issued.

(3) The decision of a contracting officer on submitted claims shall be issued within a reasonable time, in accordance with regulations promulgated by the agency, taking into account such factors as the size and complexity of the claim and the adequacy of the information in support of the claim provided by the contractor.

Here, plaintiff submitted to the Navy a letter dated April 14, 1988, which purported to be a written claim under the contract and specifically requested, in two places, a final decision by the contracting officer.[1]

---

**1.** The first paragraph of the letter states: "We    hereby submit this request for a contracting

The letter, which was addressed to the "Officer in Charge of Construction" (OICC), detailed instances of allegedly improper delay by the government and sought payments totalling in excess of $118,000. The letter was 12 pages long and described in detail the factual and legal basis of plaintiff's request. By letter dated June 6, 1988, the Resident Office in Charge of Construction (ROICC) forwarded plaintiff's April 14 letter to the contracting officer.

The contracting officer never sent plaintiff a response characterized as a final decision on the claim. However, plaintiff did receive a response from the Assistant Resident Office in Charge of Construction (AR-OICC), dated June 28, 1989, which specifically addressed each item raised in plaintiff's April 14, 1988, claim letter. The AR-OICC found some items meritorious and rejected all others. The response included a proposed contract modification that would compensate plaintiff for the claim items found meritorious. The response noted that if plaintiff failed to sign the proposed contract modification, the Navy would issue it unilaterally. On August 1, 1989, the contracting officer issued a unilateral modification, which states, in pertinent part: "As a unilateral modification to the subject contract, the contractor is compensated for claim items presented in [the] letter of 14 April 1988, for which Government review has concluded that merit exists."

On September 25, 1989, plaintiff filed its original complaint in this action seeking payments plaintiff had sought unsuccessfully through its April 14, 1988, letter. That complaint was dismissed on unrelated grounds and plaintiff refiled the instant complaint on March 12, 1990.

officer's final decision on behalf of Tri–Ad in accordance with the Disputes Clause, FAR 52.-233–1, of the general paragraphs of the subject contract." The last paragraph, repeating the same basic request, states: "By this claim, we request a contracting officer's final written decision."

2. Paragraph 66 of the contract provides, in pertinent part:

## II.

Plaintiff contends that the pertinent jurisdictional requirements for a direct action suit in this court are present. Plaintiff contends that the April 14, 1988, letter constitutes a proper written claim under Section 605(a). As to the requirement of a contracting officer decision on the claim, plaintiff contends that pursuant to Section 605(c)(5), a contracting officer decision denying the claim should be "deemed" to exist because the contracting officer received the claim on or about June 6, 1988, and failed thereafter to issue a final decision on the claim within the Section 605(c) time period.

█ In response, defendant disputes that the April 14, 1988, letter qualifies as a claim under Section 605(a). Defendant does not dispute that the letter provided adequate notice as to the basis and amount of the claim (*Contract Cleaning Maintenance, Inc. v. United States*, 811 F.2d 586, 592 (Fed.Cir.1987)) or that the letter unequivocally requested a final decision by the contracting officer. Indeed, defendant finds no fault with the body of the letter. Rather, defendant's sole criticism of the form of the letter relates to plaintiff's addressing the letter to the OICC and not to the contracting officer. Section 605(a) provides that the claim "shall be submitted to the contracting officer for a decision." Defendant alleges that because plaintiff addressed its claim letter requesting a final decision from the contracting officer to the OICC, the letter was not "submitted" to the contracting officer. Defendant notes that under paragraph 66 of the contract, the OICC is the authorized representative of the contracting officer with respect to supervising the contract work but not with respect to the handling of disputes.[2]

(a) The work will be under the general direction of the Contracting Officer, the Commander, Naval Facilities Engineering Command, who shall designate an officer of the Civil Engineer Corps, United States Navy, or other officer or representative of the Government, as Officer in Charge of Construction ... who except in connection with the "Disputes" clause shall be the authorized representative of the Contracting Officer and under the di-

In *American Pacific Roofing Co. v. United States*, 21 Cl.Ct. 265 (1990), the court recently addressed the issue of the proper interpretation of "submitted" in Section 605(a). Therein, the contractor also addressed its claim to the OICC. The court concluded that the requirements of Section 605 were satisfied and explained:

> The term "submit" means "to commit to another (as for decision or judgment)." WEBSTER'S NEW COLLEGIATE DICTIONARY, 1975, p. 1160. "Submit" is not entirely synonymous with the words "address" or "directly send." A contractor may submit a claim without necessarily sending the papers directly to the [contracting officer]. The contractor, however, must clearly commit the claim to the [contracting officer] for a final decision.

*Id.* at 267. The court analyzed the legislative history of the CDA and found it supportive of this interpretation of Section 605.

This court agrees with the approach taken in *American Pacific* and relies upon the analysis therein. Herein, the April 14, 1988, letter similarly commits the claim to the contracting officer for a final decision, and, therefore, satisfies the "submitted to the contracting officer" requirement of Section 605(a). However, even if the court were to adopt defendant's definition of "submit," which requires the claim to be addressed or sent directly to the contracting officer, Section 605(a) would still be satisfied here because the ROICC ultimately sent plaintiff's claim letter directly to the contracting officer. Section 605(a) is written in the passive voice. It merely requires that the written claim "be submitted" to the contracting officer for a decision; it does not specify *who* must submit the claim

to the contracting officer. Herein, plaintiff addressed its letter requesting a final decision by the contracting officer to the OICC and, consistent with the clear intent expressed in the letter, the ROICC sent the letter directly to the contracting officer. Plaintiff's letter, therefore, was sent directly to the contracting officer, albeit not by plaintiff but through its chosen intermediary.

Defendant criticizes the reasoning in *American Pacific* as inconsistent with the legal principle that waivers of sovereign immunity must be strictly construed. *See, e.g., United States v. Mitchell*, 445 U.S. 535, 538, 100 S.Ct. 1349, 1351, 63 L.Ed.2d 607 (1980).[3] But it can hardly be argued that interpreting the wording of a statute literally, by giving the words their ordinary meaning, is inconsistent with a strict interpretation of a statute. Indeed, it is defendant who proposes an extraordinary interpretation by departing from the dictionary definition of the statutory term "submit."

Moreover, the *American Pacific* interpretation of Section 605(a) is fully consistent with the general scheme Congress set forth in the CDA for handling disputes. Congress intended the CDA "to induce resolution of more contract disputes by negotiation prior to litigation; equalize the bargaining power of the parties when a dispute exists; ... and insure fair and equitable treatment to contractors and Government agencies." S.Rep. No. 1118, 95th Cong., 2d Sess. 1 (1978), *reprinted in* 1978 U.S.Code Cong. & Admin.News 5235. Section 605(a) encourages prelitigation settlements by assuring that the contracting officer has an opportunity to consider each contract claim prior to any court litigation. At the same time, Section 605(c) protects

rection of the Contracting Officer have complete charge of the work, and shall exercise full supervision and general direction of the work, so far as it affects the interest of the Government.

3. The contract provisions and regulations in *American Pacific* differ somewhat from those involved herein. For example, in *American Pacific*, the contract specifically provided that requests for payment be directed to the OICC, and the applicable regulations obliged the OICC to forward the requests to the contracting officer.

But defendant has not suggested that these factual distinctions are significant, but instead argues that the *American Pacific* decision is simply wrong. In any event, the factual distinctions are not determinative. In *American Pacific*, the court defined the statutory term "submit." Once defined, statutory definitions do not vary with the particular facts of a case. There is nothing in the instant contract or regulations that suggests anything other than the ordinary definition of "submit" should apply.

the contractor's interests by permitting the contractor to proceed to court if the contracting officer fails to render a decision within specified statutory time periods.

The government's interests in this statutory scheme are not compromised when a contractor addresses its claim letter requesting a final decision by the contracting officer to the OICC. Since the statutory time periods leading to a "deemed" decision commence to run upon the contracting officer's *receipt*, rather than the contractor's *submission* of, the claim, the contracting officer is assured the same time to consider a claim whether the claim is sent to the OICC or directly to the contracting officer.[4] Indeed, it is the contractor, rather than the government, whose interests are potentially compromised when the claim is addressed to the OICC. To the extent, as here, the contractor's addressing the claim to the OICC delays the contracting officer's receipt of the claim, there is not only a corresponding delay of the date the contractor may first file suit based on a Section 605(c) deemed decision, but also a corresponding delay, pursuant to Section 611 of the CDA, of the date prejudgment interest starts to accrue on the claim.[5]

### III.

■ Defendant presents an alternative argument to the effect that this court lacks jurisdiction even if plaintiff's April 14, 1988, letter was "submitted" to the contracting officer. Defendant's argument rests in part on a January 20, 1989, letter from plaintiff's vice president to the OICC. The letter states:

This letter relates to our conversation on the phone this day in which it was suggested that I write and ask that a Final Contracting Officer's Decision for the above referenced project be delayed until San Bruno has had a chance to review

our claim on the Distance Marker contract, in hopes that I can meet with you again and try to arrive at a settlement on both projects at the same time. This, I agree, is the wise thing to do. So, I will get all of my documents together in summary form, and will be prepared to negotiate these two claims when you finally hear from Bruno, and at year earliest convenience, soon after.

Defendant interprets this letter as plaintiff withdrawing its April 14, 1988, request for a final decision. Defendant argues that having withdrawn its claim, plaintiff was obliged to file a new claim if it wanted to proceed under the CDA.

But plaintiff's January 20 letter simply does not request that its claim be withdrawn. Rather, it asks only that the contracting officer's final decision "be delayed" until the Navy had an opportunity to review plaintiff's claim on another contract and until the parties had an opportunity to reach a settlement on both contracts "at the same time." The Navy issued its final decision on that other contract on March 13, 1989. Since plaintiff's effort to reach a joint settlement of both contracts had been unsuccessful, the request for a "delay," in effect, lapsed by its own terms. Moreover, after the March 13 final decision, defendant certainly did not treat the "delay" as still in effect. For example, in a June 28, 1989, letter, the AROICC announced the Navy's conclusions concerning the various items in plaintiff's April 14, 1988, claim letter, and the contracting officer thereafter issued a related unilateral contract modification.

■ Defendant also argues that plaintiff's entering negotiations with the Navy aimed at settlement of the matter is inconsistent with the existence of a dispute and that a dispute is a necessary prerequisite for a claim. But a willingness to negotiate

---

4. Defendant contended at oral argument that the CDA is intended to promote uniformity among the various agencies and that its proposed interpretation of Section 605(a) would be consistent with this goal. But either proposed interpretation of Section 605 would result in all agencies being subject to the same uniform rules.

5. Section 611 of the CDA provides, in pertinent part: "Interest on amounts found due contractors on claims shall be paid to the contractor from the date the contracting officer receives the claim pursuant to section 605(a) ... from the contractor until payment thereof."

a settlement certainly does not suggest the absence of a dispute, much less of a claim. Quite the contrary, negotiations are a means to resolve disputes and claims. In any event, the "Disputes" provision in the contract defines the term "claim" as follows:

> (c)(1) As used herein, "claim" means a written demand or assertion by one of the parties seeking, as a matter of right, the payment of money, adjustment, or interpretation of contract terms, or other relief, arising under or relating to this contract. However, a written demand by the contractor seeking the payment of money in excess of $50,000 is not a claim until certified in accordance with (d) below.
>
> (2) A voucher, invoice, or other routine request for payment that is not in dispute when submitted is not a claim for the purposes of the [CDA]. However, where such submission is subsequently disputed either as to liability or amount or not acted upon in a reasonable time, it may be converted to a claim pursuant to the [CDA] by complying with the submission and certification requirements of this clause.

Hence, there is no requirement that the government must have previously disputed the claim in the definition of "claim" in (c)(1). The only reference to "dispute" is in (c)(2). Plaintiff's 12–page claim letter, which details the factual and legal arguments supporting its entitlement to funds, cannot possibly be characterized as "[a] voucher, invoice, or other routine request for payment that is not in dispute." The claim letter satisfies each of the submission and certification requirements of (c)(1) and, therefore, constitutes a claim.[6]

In any event, the statutory time periods pertaining to a deemed decision had expired long before plaintiff's January 20, 1989, letter requesting a delay to permit negotiations. Therefore, prior to sending that letter, plaintiff had already secured the statutory right under Section 605(c) to commence suit on its claim. There is nothing in the statute or contract that suggests this statutory right to commence suit would cease to exist if the contractor thereafter proposed negotiations toward possible settlement of the claim.

In addition to lacking any support in the wording of the statute and the contract, defendant's contention that negotiations are somehow inconsistent with the existence of a Section 605(a) claim runs counter to Congress' clear intent that the CDA encourage settlement of claims prior to litigation. Prelitigation settlement of claims will necessarily be discouraged if by entering into settlement negotiations the contractor would risk losing its existing right under Section 605(c) to commence immediately a suit on its claim and find itself instead obliged to refile the claim and delay instituting suit until the statutory time periods run all over again.

### Conclusion

For the reasons stated above, defendant's motion to dismiss for lack of subject matter jurisdiction is denied.

IT IS SO ORDERED.

---

**6.** Neither *Mingus Constructors, Inc. v. United States,* 812 F.2d 1387 (Fed.Cir.1987), nor *Hoffman Constr. Co. v. United States,* 7 Cl.Ct. 518 (1985), cited by defendant, supports a contrary conclusion. In *Mingus,* the court concluded that there was no claim because the contractor's letters did not assert a legal right to the payment of stated amounts of money and did not request a decision from the contracting officer. 812 F.2d at 1395. In *Hoffman,* the court suggested that a dispute must exist to have a legitimate claim, but the court did not indicate that negotiations are inconsistent with the existence of a dispute or of a claim. Similar to *Mingus,* the *Hoffman* court observed "[t]he problem in this case is that plaintiff never submitted a claim." 7 Cl.Ct. at 523. Unlike *Mingus* and *Hoffman,* in the instant case, plaintiff did submit a letter that satisfies the contract's definition of a claim.