**ROBIN INDUSTRIES, INC., TADCOL GOVERNMENT SERVICES DIV., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 90–271C.**

United States Claims Court.

Jan. 28, 1991.

---

Robert D. Kehoe, Cleveland, Ohio, attorney of record for plaintiff. Andrew J. McLandrich, Cecil Marlowe, and Weston, Hurd, Fallon, Paisley & Howley, of counsel.

Joan M. Bernott, Washington, D.C., with whom was Asst. Atty. Gen. Stuart M. Gerson, for defendant. David M. Cohen, Director, and Thomas A. Dougherty, Jr., Dept. of Defense, of counsel.

## OPINION

FUTEY, Judge:

This government contract case is before the court on defendant's motion to dismiss plaintiff's amended complaint for lack of subject matter jurisdiction. Plaintiff contracted with the United States to supply gasoline can gaskets, and seeks recovery for a value engineering change proposal (VECP) submitted under the contract. In its motion, defendant asserts that the court lacks jurisdiction over plaintiff's amended complaint because plaintiff failed to file a properly certified claim cognizable under the Contract Disputes Act of 1978, 41 U.S.C. § 601 *et seq.* (CDA), with the contracting officer (CO). For the reasons stated below, defendant's motion to dismiss is granted.

### *Factual Background*

On approximately February 10, 1987, the Defense Industrial Supply Center (DISC) awarded Robin Industries, Inc., Tadcol Government Services Division (Robin Indus.), Contract No. DLA500–87–C–1414 (contract 1414) for the purchase and delivery of 125,000 gasoline can gaskets.[1] Specification No. MIL–G–432F, Type III of contract 1414, required the gaskets to withstand flexibility maneuvers at very low temperatures. The specification proposed the use of Eypel–F compound 705 (Eypel) to meet requisite temperature performance requirements. Contract 1414 incorporated by reference the standard value engineering clause set forth in 48 C.F.R. § 52.248–1. The clause permits a contractor to share in any net acquisition savings realized from value engineering proposals accepted by the government under the contract. On March 18, 1987, DISC ordered 30,000 additional gaskets from plaintiff under Contract/Purchase Order No. DLA500–87–M–Z884 (order Z884).

On September 21, 1987, plaintiff submitted a written request for either a time extension or a waiver of performance dates under contract 1414 and order Z884. Plaintiff also stated its intention to submit a VECP for an alternative gasket compound to be used in lieu of Eypel. On October 20, 1987, defendant sent plaintiff a "show cause" letter, stating that plaintiff's failure to timely deliver the gaskets constituted grounds for default termination of contract 1414. On October 23, 1987, plaintiff submitted a VECP and request for deviation (RFD) from specification MIL–G–432F, Type III of the contract to DISC and the Defense Contract Administration Services Management Area–Cleveland (DCASMA–Cleveland). The VECP proposed an alternative gasket compound which would allegedly achieve substantial cost savings for the government.[2] On December 7, 1987, defendant extended delivery dates for contract 1414 and order Z884 to June 15, 1988, in order to afford additional time for evaluation of plaintiff's VECP and RFD. Defendant accepted the substitution of plaintiff's gasket compound for Eypel in the performance of contract 1414 and order Z884 on May 13, 1988.

Following approval of plaintiff's gasket compound, defendant proposed modification of existing delivery dates under con-

1. The National Stock Number (NSN) for the gasoline can gaskets is 5330–00–298–7165.

2. According to plaintiff, the Eypel compound was a sole source item which sold for $120.00 a pound. Plaintiff estimates that the cost of its alternative compound was $2.00 a pound. Plaintiff's opposition to defendant's motion, p. 6.

tract 1414.[3] Defendant also sought a "no cost settlement," whereby plaintiff would retain all savings under contract 1414 and order Z884 occasioned by the substitution of plaintiff's gasket compound for Eypel. Under the proposal, plaintiff would waive all future claims relating to the VECP. After plaintiff expressed dissatisfaction with defendant's initial modification proposal, the parties conducted various settlement negotiations, all of which proved unsuccessful.[4]

On January 26, 1989, plaintiff responded to DISC's proposed modifications in a letter addressed to Avivah R.Z. Pinski, attorney-advisor, DISC. The letter provided, in relevant part:

> Any delay in performance on both contracts 1 and 2 [contract 1414 and order Z884] is attributable to value engineering changes. The time required for TAD-COL [Robin Indus.] to develop, and for the government to test and accept TAD-COL's request for deviation ("RFD") and VECP necessitates additional time for performance. TADCOL's production schedule would have permitted timely delivery but for delays attributed to developing an alternative specification for subject gaskets.
>
> The [DISC's] proposed modification contemplates delivery by March 31, 1989. The time extension is conditioned upon a "no-cost settlement" of TADCOL's VECP claim. TADCOL will not agree to a no cost settlement. However, it is self evident that an extension of time is needed.
>
> \*     \*     \*     \*     \*     \*

3. The proposed modification would require plaintiff to deliver 5,000 gaskets on or before September 30, 1988, and 5,000 gaskets per week thereafter until contract completion on March 31, 1989. The modified delivery schedule would also impact order Z884.

4. By letter of October 3, 1988, defendant informed plaintiff of the following amendments to DISC's proposed modifications: (1) an increase in the unit contract price from $.406 to $.68; (2) waiver of the right to terminate contract 1414 for default and the right to assess excess costs of reprocurement; and (3) modification of the contract delivery schedule. The proposal similarly required plaintiff to unconditionally waive any current or future claims aris-

> TADCOL's engineering efforts have resulted in great benefit to the government.... The government would have to purchase gas can gaskets for between $7.50 and $11.50 each. Conservative calculations demonstrate the significant value of TADCOL's work. TADCOL quoted at $.406 per gasket (general use). The special use gasket has been quoted at $.68. Thus, the per unit savings for the majority of gaskets purchased is approximately $7.10, one-half of which would be shared with TADCOL over the three year sharing period. A conservative forecast of 750,000 units over the sharing period, multiplied by one-half of the current savings of $3.55 per unit, equals a net acquisition savings of $2,662,500.00. This estimate is made in good faith and accurate to the best of our knowledge.
>
> In view of the foregoing, and in the spirit of reaching a practical and equitable resolution of this matter, TAD-COL offers to compromise its VECP claim for $2,200,000.00.
>
> Kindly review the foregoing with all appropriate individuals and advise. Please let us have your decision within 60 days so that we may either settle the VECP claim and close out the contracts or pursue further review of the matter.

The letter was signed by plaintiff's attorney, Robert D. Kehoe. Plaintiff's letter was forwarded to the CO, who denied plaintiff's "offer to compromise its VECP claim" by letter of April 7, 1989.[5]

ing out of the VECP in exchange for these concessions. Plaintiff's opposition, App.Ex.N.

In its amended complaint, plaintiff relates that the parties conducted further negotiations on or about October 14, 1988. Shortly thereafter, defendant sent plaintiff a modified proposal of settlement. Although the parties have not provided the court with a copy of this modified proposal, plaintiff states that defendant's position did not materially deviate from that expressed in its October 3, 1988 letter.

5. The contracting officer (CO) letter did not indicate that the communication constituted the final decision of the CO. Moreover, the letter contains no language advising the contractor of its appeal rights. *See* FAR 33.011(a)(4)(v).

Plaintiff filed a complaint in this court on March 29, 1990, seeking review of the CO's decision on its purported claim. In its complaint, plaintiff demands over $6.5 million in alleged damages arising from the government's treatment of its VECP.[6] On July 2, 1990, plaintiff amended its complaint, adding two new counts alleging $8 million in damages for detrimental reliance and breach of implied contract. Defendant filed a motion to dismiss plaintiff's complaint for lack of jurisdiction on August 13, 1990. In its motion, defendant maintains that plaintiff counsel's January 26, 1989 letter to the CO was a proposal for settlement rather than a "claim" under the CDA. Defendant also contends that the certification language of plaintiff's "claim" was defective and that plaintiff's counsel was not authorized to execute the claim certification. Plaintiff argues that the January 26, 1989 letter was a properly certified claim over which this court has jurisdiction. Plaintiff alternatively asserts that the court has Tucker Act jurisdiction over its amended complaint because Robin Indus. submission of a VECP gave rise to an implied-in-fact contract between the contractor and the government actionable under 28 U.S.C. § 1491(a).

## Discussion

### A. Issues Presented

The court must determine, at the outset, whether plaintiff's January 26, 1989 letter constitutes a claim or is merely a proposal for settlement. If the court finds that the letter is not a settlement proposal, then the court must further decide: (1) whether the certification contained in the letter satisfied CDA requirements; and (2) whether plaintiff's attorney was authorized to execute the certification on behalf of Robin Indus. If the court lacks CDA jurisdiction over plaintiff's amended complaint, the court will additionally address whether the action may be entertained under the Tucker Act.

### B. Elements of a Claim

■ A contractor's submission of a claim to the contracting officer is the "linchpin" of the contract disputes process. *Paragon Energy Corp. v. United States*, 227 Ct.Cl. 176, 645 F.2d 966 (1981). The presentation of a claim to the CO triggers the running of interest and obligates the CO to issue a final decision within applicable time limits. *See* 41 U.S.C. §§ 605(c) and 611 (1988). The CDA requires that "[a]ll claims by a contractor against the government relating to a contract shall be in writing and submitted to the contracting officer for a decision." 41 U.S.C. § 605(a) (1988). The CDA further requires, for claims in excess of $50,000.00, that "the contractor shall certify that the claim is made in good faith, that the supporting data are accurate and complete to the best of his knowledge and belief, and that the amount requested accurately reflects the contract adjustment for which the contractor believes the government is liable." 41 U.S.C. § 605(c)(1). The submission of a properly certified claim is a jurisdictional prerequisite for review by the court of a claim exceeding $50,000.00. *Ball, Ball & Brosamer, Inc. v. United States*, 878 F.2d 1426 (Fed.Cir.1989); *W.H. Moseley Co. v. United States*, 230 Ct.Cl. 405, 677 F.2d 850, *cert. denied*, 459 U.S. 836, 103 S.Ct. 81, 74 L.Ed.2d 77 (1982). A CO's final decision on a defective claim is a legal nullity. *W.M. Schlosser Co. v. United States*, 705 F.2d 1336 (Fed.Cir.1983).

The CDA contains no definition of the term "claim." However, the Federal Acquisition Regulation (FAR) defines a "claim" as follows:

"Claim," ... means a written demand or written assertion by one of the contracting parties seeking, as a matter of right, the payment of money in a sum certain, the adjustment or interpretation of contract terms, or other relief arising under or relating to the contract.... However, a written demand or written assertion by the contractor seeking payment of money exceeding $50,000.00 is not a claim under the Contract Disputes

---

**6.** Plaintiff seeks over $4 million in damages occasioned by defendant's denial of its VECP "claim." In addition, plaintiff seeks an addi-

tional $2.5 million in damages purportedly caused by government's improper treatment of its alleged claim. Complaint ¶¶ 54–64.

Act of 1978 until certified as required by the Act.

48 C.F.R. § 33.201 (1988).

■ The FAR language has been construed to require a claim to contain a written demand or assertion of a legal right to a specified monetary sum. *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1395 (Fed.Cir.1987). In addition, a contractor's communication must request a decision from the CO to be considered a claim for CDA purposes. *Contract Cleaning Maintenance, Inc. v. United States*, 811 F.2d 586, 593–93 (Fed.Cir.1987); *RSH Constructors, Inc. v. United States*, 14 Cl.Ct. 655, 657 (1988); *Hoffman Construction Co. v. United States*, 7 Cl.Ct. 518, 522–26 (1985). A mere proposal for settlement represents an invitation to negotiate and does not constitute a claim. *Mayfair Construction Co. v. United States*, 841 F.2d 1576, 1577 (Fed.Cir.), *cert. denied*, 488 U.S. 980, 109 S.Ct. 528, 102 L.Ed.2d 560 (1988). The court will determine the sufficiency of purported CDA claims on a case-by-case basis. *Gardner Machinery Corp. v. United States*, 14 Cl.Ct. 286, 290 (1988).

### C. The January 26, 1989 Letter

Defendant maintains that plaintiff's lawyer's letter to DISC is not a claim as contemplated by the CDA. Defendant extracts the following language from the letter to support its assertion that the document in question was submitted as a proposal for settlement:

> The file discloses that DISC accepted TADCOL's [Robin Indus.] VECP claim. Thus, the only issue necessary for determination by CO Dormer is the value of the VECP. On this point, DISC has posited three alternatives for TADCOL's consideration.
>
> a) settlement of the VECP at no cost to either party.
> b) a lump-sum payment (in the form of an increased unit price); or
> c) application of the "current method" approach, which leaves the VECP claim pend[ing], subject to future purchases.

> It is TADCOL's *preference* to pursue settlement option 2, a lump-sum payment. [Emphasis added.]

Defendant concludes that the above language "betrays the purported 'claim's' true nature as a proposal, not a true claim." [7]

■ Plaintiff's January 26, 1989 letter, viewed in the most favorable light, contains several characteristics of a CDA claim. The letter was dispatched after the parties had reached an impasse in their negotiations. Plaintiff's letter .was written to dispute the government's position, not to invite further negotiations between the parties. Throughout the parties' negotiations, defendant insisted on a "no-cost settlement" as a condition for modification of the delivery schedule under contract 1414 and order Z884. Plaintiff's letter plainly states that Robin Indus. would not agree to a "no-cost settlement" because the contractor's performance delays were occasioned by the development, testing, and approval of the alternative compound and were, therefore, excusable. In addition, plaintiff consistently uses the word "claim" in the letter and discusses in detail its estimated recovery under the contract. The letter predicates compensation on the government's purported acceptance of the VECP. More specifically, the letter demands remuneration for development of the alternative gasket compound through a 50 percent sharing of the projected cost savings accruable to the government in accordance with the terms of the contract. In so doing, the letter sets forth the legal theory upon which the claim is based. Plaintiff's letter further states that the alternative compound would save the government $7.10 per gasket under future gasket supply contracts. In turn, plaintiff's letter seeks $2.2 million in compensation from the government. This calculation represents a lump sum payment of approximately one-half the forecasted government savings during the 3–year sharing period set forth in the VECP clause of the contract. As such, the letter demands a sum certain from the

---

7. Defendant's motion, p. 12.

government.[8] In short, plaintiff provided the government with a clear and unequivocal statement of the basis and amount of its claim. Furthermore, the letter requests a final decision from the CO. The letter seeks a "decision within 60 days" to "either settle the VECP claim and close out the contracts, or pursue further review of the matter."[9] The CO in fact referred to the plaintiff's letter as a claim and denied that the government had accepted plaintiff's VECP.[10] There is no talismanic language that gives rise to a claim. Even though the letter did not specifically request a "final decision" from the "CO," plaintiff's reference to the CO's statutory obligations under the CDA and stated intention to pursue further CDA remedies, if necessary, appears to constitute a demand for a final decision on the claim.

■ Defendant contends that, although the January 26, 1989 letter was apparently intended to be a claim, plaintiff never submitted the communication to the CO for a final decision. In support of its position, defendant cites *West Coast General Corp. v. United States*, 19 Cl.Ct. 98 (1989), where the court concluded that a contractor had in fact failed to satisfy CDA requirements by sending its claim to the resident officer in charge of construction (ROICC) instead of the CO. Plaintiff, nevertheless, maintains that the submission satisfied CDA requirements, relying primarily upon the court's decision in *American Pacific Roofing Co. v. United States*, 21 Cl.Ct. 265 (1990). In *American Pacific Roofing*, the contractor submitted a claim to the ROICC in accordance with the requirements of the contract. The court held that the contractor correctly transmitted its claim to the ROICC because the contract directed "all requests for payment" to the ROICC rath-

8. The fact that Robin Indus. demanded less than the amount it claimed entitlement to under the contract did not transform the letter into an offer for settlement. In the letter, plaintiff requests a lump sum payment of alleged future contract savings that will inure to the government. Plaintiff's calculations are based on estimated future purchases involving the VECP compound during the applicable sharing period. The calculations, therefore, contain a considerable margin of error. Given the evidence at hand, plaintiff's "offer to compromise" the VECP claim for $2.2 million was merely an acknowledgement of the uncertainty of these calculations and represented a good faith effort to account for this uncertainty when demanding payment of a sum certain by the government.

9. Under the CDA, a CO must decide a claim over $50,000.00 or inform a contractor when the claim will be decided within 60 days of receipt. 41 U.S.C. § 605(c)(2).

10. By letter of April 7, 1990, the CO provided: You state that [Robin Indus.] is willing to compromise its VECP claim at a "fair and equitable amount" of $2,200,000.00. You requested a decision within sixty (60) days so that you may either close out the contracts or pursue the claim further. I have conducted an extensive review of this matter, and upon advice of counsel, I have determined that your client's claim be denied in its entirety.

* * * * * *

The mailgram from J. Kelly of DISC on 13 May 1988 advised TADCOL [Robin Indus.] that its offer of Specification 8704 evaluated by NATICK [alternative gasket compound] was accepted and meets the requirements of NSN 5330–00–298–7165. This mailgram expanded on the prior message of 13 April 1988 in which TADCOL was advised that its material had been found acceptable for K [contract]–1414 and P.O. [order]–Z884 *only*. Thus, the message and mailgram were advice to your client that its RFD had been approved. In no way did it refer to a VECP, or indicate that the VECP which had been submitted had been approved. In fact, by message of 23 May 1988, TADCOL was advised that the VECP had been submitted to the VE Program Office and *was under review*. (Emphasis added.) The no-cost settlement posed to TADCOL in August 1988 was not an indication of acceptance of TADCOL's VECP, but was an attempt to obtain delivery of the supplies for which the Government had contracted and for which it still had a need. No written acceptance has been provided to TADCOL with respect to its VECP.

* * * * * *

[A] VECP is a proposal which requires a change to the instant contract to implement, and results in reducing, the overall projected cost to the agency without impairing essential functions or characteristics. As TADCOL's proposal requires a contract change at no cost savings to the Government, it is only a request for deviation to the contract. As noted previously herein, the alternative material was approved for Type III, Class 1 gaskets only. The approval does not apply to Type III, Class 2 gaskets, which must meet Specification MIL–G–432F.

Based on the foregoing, I cannot accept your client's VECP.

er than the CO. *Id.* at 268. The former case was distinguished by the court in *American Pacific Roofing* on the grounds that the claim document in *West Coast General* was ambiguous and could easily confuse the CO about "what he is dealing with, and what he is expected to do." *American Pacific Roofing Co.*, 21 Cl.Ct. at 268, citing *West Coast General Corp.*, 19 Cl.Ct. at 102–03.

The CDA requires that all claims "be submitted to the contracting officer for a final decision." 41 U.S.C. § 605(a). The presentation of a claim to the CO is not a minor formality, but an integral part of the statutory disputes process which must be complied with before the court can assert jurisdiction over a contractor's direct access appeal. Plaintiff's letter was addressed to a DISC attorney, not the CO. However, the DISC attorney forwarded the letter to the CO, who responded to plaintiff's communication on April 7, 1989. Defendant, therefore, asserts that plaintiff fell short of meeting the CDA submission requirement notwithstanding the fact that the January 26, 1989 letter eventually reached the CO. In essence, defendant argues that a contractor must directly address all claims to the CO unless the contractor is instructed to do otherwise by the contract or the CO. The court rejects this interpretation as inconsistent with the plain language of the CDA. Congress elected to use the broad term "submitted" instead of the words "directly sent" or "directly transmitted" in § 605(a) of the CDA. Congress, therefore, intended to provide other means of claim submission, i.e. through an intermediary, rather than imposing the rigid requirement that all claims be directly sent to the CO. *American Pacific Roofing*, 21 Cl.Ct. at 268. Moreover, it is the CO's *receipt*, not the contractor's submission, of a claim which obligates the government to render a decision on the claim and triggers the running of interest under the CDA. *Lakeview Constr. Co. v. United States*, 21 Cl.Ct. 269, 276 (1990). By addressing the letter to the DISC attorney, plaintiff bore the risk of non-transmission of the claim to the CO. However, it is undisputed that the claim was in fact re-ceived by the CO. Once the claim reached the CO, plaintiff satisfied the submission requirement set forth in § 605(a) of the Act. *TRI–AD Constructors v. United States*, 21 Cl.Ct. 789 (1990). The court, therefore, finds that plaintiff "submitted" its claim to the CO even though the claim was addressed to the DISC attorney. To the extent this conclusion is inconsistent with the holding in *West Coast General*, the court respectfully declines to follow that decision.

■ Assuming *arguendo* that plaintiff's letter is found to be a sufficient claim under the CDA, plaintiff cannot overcome the certification deficiencies plaguing the claim. Section 605(c)(1) of the CDA provides:

> For claims of more than $50,000.00, the contractor shall certify that the claim is made in good faith, that the supporting data are accurate and complete to the best of his knowledge and belief, and that the amount requested accurately reflects the contract adjustment for which the contractor believes the government is liable.

A contractor's certification must clearly and unequivocally comply with the statute. *Aeronetics Div. v. United States*, 12 Cl.Ct. 132 (1987). The certification must simultaneously state all three assertions required by the CDA. *W.H. Moseley Co. v. United States*, 230 Ct.Cl. 405, 677 F.2d 850, *cert. denied*, 459 U.S. 836, 103 S.Ct. 81, 74 L.Ed.2d 77 (1982). The court may only entertain jurisdiction over claims in substantial compliance with CDA certification requirements. *Cox Constr. Co. v. United States*, 21 Cl.Ct. 98 (1990).

■ Plaintiff's letter does not contain a proper certification. The letter merely recites that "this estimate is made in good faith and accurate to the best of our knowledge." Plaintiff's submission does not state that the *data underlying the estimate* is accurate and complete to the best of the contractor's knowledge. In addition, plaintiff failed to state that the amount requested accurately reflects the sum for which the contractor believes the government to be liable. The court finds that the

absence of the second and third elements, set forth in § 605(c)(1) of the CDA, renders plaintiff's certification inadequate.[11] Furthermore, plaintiff's certification was not executed by an authorized individual. The FAR provides the following guidance on who may certify contract claims:

> (c)(1) If the contractor is an individual, the certification shall be executed by that individual.
>
> (2) If the contractor is not an individual, the certification shall be executed by—
>
> (i) A senior company official in charge at the contractor's plant or location involved; or
>
> (ii) An officer or general partner of the contractor having overall responsibility for the conduct of the contractor's affairs.

FAR 33.207.

■ Plaintiff's certification, included in the January 26, 1989 letter, was signed by plaintiff's counsel, Robert D. Kehoe. The court has previously held that an attorney's execution of a certification on behalf of a corporate contractor, without more, does not satisfy the certification requirements of FAR 33.207. *Romala Corp. v. United States*, 12 Cl.Ct. 411 (1987). The court has been provided with no evidence suggesting that Mr. Kehoe was a senior company official of Robin Indus. or acted in a supervisory capacity in the performance of contract 1414. Rather, the record indicates that Mr. Kehoe, as outside corporate counsel, was neither an officer nor a senior official of Robin Indus. The court, therefore, finds that Mr. Kehoe lacked authority to certify claims on behalf of the contractor. *T.J.D. Services, Inc. v. United States*, 6 Cl.Ct. 257 (1984). Since plaintiff failed to certify its purported claim in accordance with statutory and regulatory mandates, the court lacks jurisdiction over plaintiff's direct access appeal.

### D. Tucker Act Jurisdiction

Plaintiff alternatively contends that the court may entertain this action under the Tucker Act, 28 U.S.C. § 1491(a)(1). Plaintiff asserts that its amended complaint contains implied-in-fact and estoppel claims not within the coverage of the CDA.[12] The court finds that plaintiff's position is without merit.

■ The CDA is applicable to any express or implied contract entered into by an executive agency for:

> (1) the procurement of property, other than real property in being;
>
> (2) the procurement of services;
>
> (3) the procurement of construction, alteration, repair or maintenance of real property; or
>
> (4) the disposal of personal property.

41 U.S.C. § 602(a).

The CDA provides the sole avenue of appeal for "all claims relating to a contract" covered by the Act. *Mark Smith Constr. Co. v. United States*, 10 Cl.Ct. 540, 542 (1986); 41 U.S.C. § 605(a). If covered by the CDA, a contractor must meet all the requirements of the Act before bringing a direct access suit in this court. *Summit Contractors v. United States*, 15 Cl.Ct. 806 (1988). The Tucker Act does not provide an independent basis for jurisdiction over CDA claims not in compliance with the Act. It is clear beyond cavil that contract 1414 falls within the ambit of the CDA. The contract involves a procurement of property (supplies) by an executive agency. In addition, all four counts of plaintiff's amended complaint assert causes of action

---

**11.** Plaintiff asserts that the certification contained in the January 26, 1989 letter "substantially complied" with CDA requirements in accordance with *United States v. General Electric Corp.*, 727 F.2d 1567 (Fed.Cir.1984). In *General Electric*, the contractor certified that the claim was made in good faith and that the supporting data was accurate and complete to the best of the signer's knowledge and belief. The government argued that the certification was defective because the contractor failed to recite the third certification requirement. The Federal Circuit concluded that the absence of the third certifica-

tion requirement did not render the certification defective because the documents accompanying the certification demonstrated substantial compliance with the statute. In the present case, plaintiff provides no evidence that the January 26, 1989 letter contained supporting documentation which comprised the substantial equivalent of the third prong of § 605(c)(1) of the CDA.

**12.** Plaintiff's opposition, p. 27.

relating to the VECP submitted under contract 1414. Plaintiff's complaint, therefore, asserts a claim "relating to a contract" within CDA coverage. *See generally ICSD Corp.*, ASBCA No. 28028, 90–3 BCA ¶ 23,027, 1990 WL 132829 (1990). As such, plaintiff was required to proceed properly under the Act. Plaintiff's failure to do so deprives this court of jurisdiction over the instant suit. *W.M. Schlosser Co. v. United States*, 705 F.2d 1336, 1340 (Fed. Cir.1983).

█ It is well established that the requirements of the CDA are strictly construed by this court. *RSH Constructors*, 14 Cl.Ct. at 659. A contractor's omission of even a single statutory element is fatal to the court's jurisdiction. In the instant case, plaintiff has failed to submit a properly certified claim to the CO. Accordingly, the court concludes that plaintiff's January 26, 1989 letter is not a "claim" cognizable under the CDA since the letter did not comply with the Act's certification requirements.

### Conclusion

For the foregoing reasons, the court grants defendant's motion to dismiss plaintiff's amended complaint for lack of subject matter jurisdiction. The Clerk is directed to dismiss the amended complaint without prejudice. No costs.